STATE OF NEBRASKA, APPELLEE, V. AMERICAN THEATER COR-
PORATION, A NEBRASKA CORPORATION, DOING BUSINESS AS
PUSSY CAT THEATER, APPELLANT.

230 N. W. 2d 209

Filed June 5, 1975. No. 39706.

Robert Eugene Smith, Gilbert H. Deitch, and Stern, Harris, Feldman, Becker & Thompson, for appellant.

Paul L. Douglas, Attorney General, and Ralph H. Gillan, for appellee.

Heard before BOSLAUGH, NEWTON, CLINTON, and BROD-KEY, JJ., HASTINGS and RIST, District Judges, and KUNS, Retired District Judge.

HASTINGS, District Judge.

Defendant, a corporation operating the Pussy Cat Theater in Omaha, was charged in municipal court under section 28-921, R. S. Supp., 1972, with distribution of obscene material, tried to a jury, found guilty, and

sentenced. On appeal on the record, the District Court also found defendant guilty, imposed a fine of $500, and overruled the motion for a new trial. We affirm.

The evidence is undisputed that a so-called "private showing" of the movie Deep Throat had been arranged at defendant's theater by telephone solicitation among a group of 75 to 90 people. These people paid $7 per couple to the defendant's manager who then placed their names on a list of those who would be authorized to enter the particular portion of the theater where the film would be shown. When it became apparent that the police intended to take action against the film and the defendant, an attempt was made to alter the showing in progress by switching films and forcibly to prevent the police from seizing the film.

Although defendant lists numerous assignments of error, only three are argued, the first being in three parts, and to which our consideration must be limited.

First, defendant claims that sections 28-920, et seq., R. R. S. 1943, and specifically section 28-921, R. S. Supp., 1972, are repugnant to its rights under the First, Fifth, and Fourteenth Amendments to the Constitution of the United States; the trial court erred in not properly instructing the jury on the standards of obscenity as defined in Miller v. California, 413 U. S. 15, 93 S. Ct. 2607, 37 L. Ed. 2d 419; and then, apparently, had the trial court done so, the defendant was subjected to an ex post facto law because Miller, *supra,* changed the law between the date of the offense and the date of the trial.

Considering the second part of defendant's first assignment, it contends in its brief that the trial court denied its proposed instruction No. 1 which set forth the proper standards of obscenity taken from Miller v. California, *supra,* "and instead gave a definition that excluded the phrase 'whether the work depicts or describes in a patently offensive way sexual conduct specifically defined by state law.' " Failure to give defendant's re-

quested instruction No. 1 does not appear in defendant's brief under the topic, "Assignments of Error." Under the rule announced in Ripp v. Riesland, 180 Neb. 205, 141 N. W. 2d 840, an error discussed but not assigned in appellant's brief, which is not a plain error, will not be considered on appeal. What is additionally vexatious is that no requested instruction No. 1 appears anywhere in the transcript. In any event, an examination of the court's instructions reveals that it did properly instruct the jury on this issue. By instruction No. 5 the jury was told that it must find beyond a reasonable doubt that defendant willfully and knowingly circulated an obscene, lewd, indecent, and lascivious movie; and that in order to reach that decision, it ". . . must find beyond a reasonable doubt that all of the following numbered propositions coalesce, that is, unite unto a whole: . . . (2) That the movie 'Deep Throat' depicts or describes in a patently offensive way sexual conduct that is specifically defined by the Statutes of Nebraska. . . ." Instruction No. 6 defined prurient interest as a ". . . shameful or morbid interest in sex, nudity or excretion which goes beyond the customary limits of candor." Instruction No. 7 set forth the pertinent portions of section 28-921, R. S. Supp., 1972, forbidding the circulation of ". . . any obscene, lewd, indecent, or lascivious . . ." material and describing ". . . the standard for judging obscenity to be applied as a guide by finders of fact in considering the evidence is whether to the average person the dominant theme of said material or conduct which is at issue in such civil action or criminal proceedings, taken as a whole, . . . is to excite lustful thoughts, or a shameful or morbid interest in nudity, sex or excretion which goes substantially beyond the customary limits of candor."

Apparently defendant's claim is that the statutes of Nebraska proscribing "obscene, lewd, indecent, or lascivious" movie films do not constitute specifically defined

sexual conduct. This court in State v. Little Art Corp., 191 Neb. 448, 215 N. W. 2d 853, quoted the following language from United States v. 12 200-Ft. Reels of Film, 413 U. S. 123, 93 S. Ct. 2665, 37 L. Ed. 2d 500 (1973): " 'If and when such a "serious doubt" is raised as to the vagueness of the words "obscene," "lewd," "lascivious," "filthy," "indecent," or "immoral" as used to describe regulated material in 19 U. S. C. § 1305 (a) and 18 U. S. C. § 1462, see United States v. Orito, post, at 140 n. 1, we are prepared to construe such terms as limiting regulated material to patently offensive representations or descriptions of that specific "hard core" sexual conduct given as examples in Miller v. California, ante, at 25 . . . .' " We went on to say: "We find that the Nebraska statutes fully comply with the requirements of Miller v. California, supra, and other related cases."

There not only were no "plain errors" in the trial court's instructions setting out the Miller standards, but they were correctly given. We further find that the criteria for determining obscenity set forth in sections 28-920, et seq., R. R. S. 1943, and as construed by this court in State v. Little Art Corp., supra, are not vague and indefinite so as to be repugnant to defendant's rights under the First, Fifth, and Fourteenth Amendments, nor is defendant being subjected to an ex post facto law. "We further find that in once more affirming the conviction of defendant, no retroactive application of the law is involved. At the time of the violation by defendant our statutes were in full force and effect. Their meaning and purpose were clear. We have not given them a new or different construction but have simply affirmed and called attention to their clear meaning and intent." State v. Little Art Corp., supra, at p. 452. In any event, defendant insists that it was tried on Roth-Memoirs standards rather than Miller standards as contained in its requested instruction No. 1. We have already pointed out that the trial court's instruction No. 5 was nearly identical with the defendant's proffered instruction as

closely as we can reconstruct it from its brief. As-
suming only for the sake of discussion that the trial
court should have given the pre-Miller instruction taken
from Roth-Memoirs, this would fall into the category
of invited error from which the defendant can take no
advantage. See Lovings v. State, 158 Neb. 134, 62 N. W.
2d 672, cert. den., 348 U. S. 850, 75 S. Ct. 77, 99 L. Ed.
670, wherein we said: "Instruction No. 7 about which
defendant complained was identical with instruction No.
3 requested by him. It not only correctly recited the
provisions of section 29-106, R. R. S. 1943, but also de-
fendant has placed himself in a position where he has
no right to complain about the giving of it."

Defendant's second assignment of error contends that
the statute, complaint, and evidence failed to specify,
allege, and prove scienter or guilty knowledge. The ap-
plicable statute, section 28-921, R. S. Supp., 1972, as set
forth in part in instruction No. 7, stated: "Whoever
knowingly sells . . . or otherwise circulates . . . ." The
complaint, so much of which is necessary, was set forth
in instruction No. 2: "The Complaint in this case, in
substance, charges that . . . the defendant . . . did know-
ingly sell . . . ." Instruction No. 5 required the jury to
find that the ". . . defendant . . . did willfully and know-
ingly sell . . . ." The efforts of defendant's employees
to switch films in the middle of the show and forcibly to
prohibit the police from seizing the film, plus the very
fact of its showing under such surreptitious circum-
stances, leaves no doubt as to the quantum of proof.
"In this case the films were being publicly shown by the
defendant and knowledge of their contents or character
by defendant's employees was inescapable." State v. Lit-
tle Art Corp., 189 Neb. 681, 204 N. W. 2d 574.

Finally, in its third assignment of error, defendant
charges that the film was not obscene as a matter of
law as it existed during the period of time of the al-
leged offense. Defendant, in its brief, "requests the
Court to perform its judicial duty under Jacobellis v.

Ohio, 378 U. S. 184, to determine the obscenity vel non of the publications (sic) prosecuted as being obscene." Apparently, reference is to the following language of Jacobellis v. Ohio, 378 U. S. 184, 84 S. Ct. 1676, 12 L. Ed. 2d 793: "Hence we reaffirm the principle that, in 'obscenity' cases as in all others involving rights derived from the First Amendment guarantees of free expression, this Court cannot avoid making an independent constitutional judgment on the facts of the case as to whether the material involved is constitutionally protected." In other words, the court suggests that the usual test in reviewing a jury verdict, i.e., is the finding supported by sufficient evidence, is not applicable in First Amendment cases and since it is only "obscenity" that is excluded from constitutional protection, the question whether a particular work is obscene is an issue which must be decided by the court as a matter of law, in reviewing such cases.

United States v. Groner, 494 F. 2d 499 (5th Cir., 1974), suggests that the review we should make should be based upon both the Roth-Memoirs (Roth v. United States, 354 U. S. 476, 77 S. Ct. 1304, 1 L. Ed. 2d 1498, and Memoirs v. Massachusetts, 383 U. S. 413, 86 S. Ct. 975, 16 L. Ed. 2d 1), standards and the Miller (Miller v. California, *supra*), test. "As that case (United States v. Thevis, 484 F. 2d 1149) demands, the proper review procedure for determining whether pre-Miller material is obscene is to test the material under both the Roth-Memoirs standard and the Miller standard." The Roth-Memoirs test includes (1) the dominant theme taken as a whole appeals to a prurient interest in sex, (2) the material is patently offensive because it affronts contemporary standards relating to representation of sexual matters, and (3) it is utterly without redeeming social value. The Miller standard requires that (1) the average person applying contemporary community standards would find the work as a whole appeals to a prurient interest in sex, (2) the work depicts in a patently

offensive way sexual conduct specifically defined by law, and (3) the material lacks serious literary, artistic, political, or scientific value.

This court has viewed the film "Deep Throat" and is prepared "to perform its judicial duty" as requested in defendant's brief. The following quotation from United States v. One Reel of Film, 481 F. 2d 206 (1st Cir., 1973), contains an accurate and lucid description of the film in question:  "The court went on to make findings as to the content and nature of 'Deep Throat.' It found that it contains scenes of explicit heterosexual intercourse, including group sex, and emphasizes various scenes of explicit penetration, fellatio, cunnilingus, female masturbation, anal sodomy, and seminal ejaculation. It found that:  "[t]hey dominate the film in depiction and running time to such extent that, following the opening innocuous few minutes (probably not more than eight) until 'The End' flashes on the screen, scenes of sexual acts cascade one upon the other with minor interruptions.  All these are accompanied by musical sounds and some dialogue, and enlivened on two occasions with bells ringing, bombs and rockets bursting. Camera angles and close-ups give maximum emphasis in time and dimensions to the genitalia during the sexual exhibitions.

"We are thus left with a rarity:  a film so single-minded as to fail even the older Roth-Memoirs test—unless one is tempted, as plainly a majority of the Supreme Court is not, to find redeeming social value in the explicit portrayal, without more, of sexual congress itself."

We find that the film is hard-core pornography and is obscene under both the Roth-Memoirs test and the more recent, and less stringent, Miller test.

The judgment of the District Court is affirmed.

AFFIRMED.