## STATE OF HAWAII, Plaintiff-Appellee *v.* THOMAS MANZO, Defendant-Appellant

### NO. 5795

NOVEMBER 23, 1977

RICHARDSON, C.J., KOBAYASHI, OGATA,
MENOR AND KIDWELL, JJ.

OPINION OF THE COURT BY KIDWELL, J.

Appellant was charged, in the district court, that he "knowing its contents and character did disseminate for monetary consideration pornographic materials, to wit, an 8 mm movie film entitled "Dog Instruktio"", thereby committing the offense of Promoting Pornography, in violation of Section 1214(1)(a) of the Hawaii Penal Code."

After Appellant's demand for a jury trial, the cause was transferred to the circuit court, where Appellant moved to dismiss. The circuit court denied the motion and allowed an interlocutory appeal. Appellant claims that the statute under which he was charged violates the protection of speech and the guarantee of due process contained in the First and Fourteenth Amendments of the United States Constitution and the corresponding provisions of the Hawaii State Constitution.

HRS § 712-1214 (§ 1214 of the Penal Code) provides:

*Promoting pornography.* (1) A person commits the offense of promoting pornography if, knowing its content and character, he:

(a) Disseminates for monetary consideration any pornographic material; or

(b) Produces, presents, or directs pornographic performances for monetary consideration; or

(c) Participates for monetary consideration in that portion of a performance which makes it pornographic.

(2) Promoting pornography is a misdemeanor.

Significant terms are defined in HRS § 712-1210 as follows:

*Definitions of terms in this part.* In this part unless a different meaning is required:

(1) "Disseminate" means to manufacture, issue, publish, sell, lend, distribute, transmit, exhibit, or present material or to offer or agree to do the same.

(2) "Material" means any printed matter, visual representation, or sound recording, and includes but is not limited to books, magazines, motion picture films, pamphlets, newspapers, pictures, photographs, drawings, sculptures, and tape or wire recordings.

\* \* \* \* \*

(5) "Pornographic." Any material or performance is "Pornographic" if all of the following coalesce:

(a) Considered as a whole, its predominant appeal is to prurient interest in sexual matters. In determining predominant appeal, the material or performance shall be judged with reference to ordinary adults, unless it appears from the character of the material or performance and the circumstances of its dissemination that it is designed for a particular, clearly defined audience. In that case, it shall be judged with reference to the specific audience for which it was designed.

(b) It goes substantially beyond customary limits of candor in describing or representing sexual matters. In determining whether material or a performance goes substantially beyond the customary limits of candor in describing or representing sexual matters, it shall be judged with reference to the contemporary standards of candor of ordinary adults relating to the description or representations of such matters.

(c) It is utterly without redeeming social value.

The First Amendment of the United States Constitution, made applicable to the states by the Fourteenth Amendment, prohibits abridgment of "the freedom of speech". Article I, Section 3 of the Hawaii State Constitution provides: "No law shall be enacted . . . abridging the freedom of speech . . . . "

The Fourteenth Amendment of the United States Constitution provides that no person shall be deprived by a state "of life, liberty or property, without due process of law." Article I, Section 4 of the Hawaii State Constitution contains an identical provision.

Appellant contends that § 1214(1)(a), with the definitions contained in § 1210, infringes these guarantees. The principal thrust of Appellant's argument is that the Hawaii Constitution is not subject to the limitations placed by the United States Supreme Court upon the Federal Constitution, and should be held to provide the same freedom with respect to the dissemination of pornography as to that of nonpornographic material. He also argues that the definition of "pornographic" in § 1210 is impermissibly vague in violation of the due process guarantees of both constitutions.

Since this appeal is from a denial of a motion to dismiss, if Appellant may constitutionally be found guilty upon any state of facts embraced by the charge we must affirm. *United States v. Petrillo*, 332 U.S. 1 (1947). The material alleged to be pornographic is described only as an 8 mm. movie film, with a title which we do not regard as significantly defining its contents. We are thus called upon to determine the constitutionality of a penal statute upon hypothetical facts, i.e., we must engage in conjecture whether the charge embraces any

state of facts under which Appellant may constitutionally be adjudged guilty of the offense charged. Appellant asks us to do more, and to determine that, notwithstanding that the actual conduct of Appellant might not be protected, this statute is facially unconstitutional and invalid because the statute could apply by its terms to conduct which lies within the protection of a constitutional provision and to which the statute cannot constitutionally be applied. In other words, we are asked to determine that the statute is overbroad.

Our analysis of Appellant's claims to constitutional protection leads us to the conclusion that neither the First Amendment nor Article I, Section 3 of the Hawaii Constitution protects the conduct charged by the complaint. We interpret Article I, Section 3 of the Hawaii Constitution as excluding obscenity from protected speech. We construe § 1210(5) to incorporate those limitations upon its definition of pornographic materials and performances which the Supreme Court has prescribed as requisite under the First Amendment. We find that the statute under which Appellant was charged, as so construed, is not facially unconstitutional for overbreadth under either the First Amendment or Article I, Section 3 of the Hawaii Constitution, and is not void for vagueness. The interlocutory order denying Appellant's motion to dismiss is accordingly affirmed.

I

We look first at the claims made by Appellant under the First Amendment's protection of free speech. To fix a point of departure, historically, we note that the Constitution of the State of Hawaii went into effect on August 21, 1959, upon the issuance of a presidential proclamation admitting the State of Hawaii into the Union. The Supreme Court had announced but two years earlier that obscenity is outside the protection of the First Amendment because "such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest

in order and morality." *Roth v. United States*, 354 U.S. 476, 485 (1957). The test of obscenity was stated to be "whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest." 354 U.S. at 489. The Court thus embarked upon what it has itself termed a "tortured history" of attempts to formulate a workable definition of obscenity. In this context, obscenity has been viewed by the Court as having a specific judicial meaning which confines it to that which deals with sex and renders the term substantially synonymous with pornography. *Miller v. California*, 413 U.S. 15, 18 n. 2 (1973).

It is "the traditional rule that a person may not challenge a statute upon the ground that it might be applied unconstitutionally in circumstances other than those before the court." *Bates v. State Bar of Arizona*,       U.S.       (1977). In the present context, application of this rule would require Appellant to show that no conceivable combination of facts could both fit the charge and be a constitutional basis of guilt. But where the First Amendment is involved an exception to this rule has been created (the overbreadth doctrine) pursuant to which it is sufficient, in order to establish facial invalidity, merely to show that the challenged statute is broad enough in its terms to suppress protected speech, without the need of showing that the specific conduct before the court is protected. *Gooding v. Wilson*, 405 U.S. 518 (1972); *Bigelow v. Virginia*, 421 U.S. 809 (1975).

The need for a precise, rather than conceptual, distinction between what is protected speech and what is obscene material that may be regulated without infringement of the First Amendment has arisen primarily out of the operation of the overbreadth doctrine. Where constitutional protections other than those of the First Amendment are implicated by a criminal statute, the focus of inquiry when the protection is claimed by an accused is upon the specific conduct before the court and, if that conduct is found to be unprotected, it is not a matter of concern that the language of the statute may embrace other conduct which would be protected. Where overbreadth analysis is appropriate under the First Amendment,

however, the inquiry must be into whether the language of the statute makes criminal any conduct which is constitutionally protected, whether or not the specific conduct before the court is protected. A statute which regulates obscenity, therefore, may be enforced against any offender, regardless of the nature of the material involved in the specific case, only if the definition of the proscribed material is not broader than the definition of obscenity used by the Court in drawing the line between protected and unprotected utterances under the First Amendment. The Court has been faced with the task of articulating, in language capable of precise application, a test of obscenity which will enable it to determine not only that specific materials before it are not protected by the First Amendment but also that the statute is not broad enough to reach protected materials.

The test of obscenity upon which five members of the Court had agreed in *Roth* was modified by a plurality opinion in *Memoirs v. Massachusetts*, 383 U.S. 413 (1966) to require that "three elements . . . coalesce: it must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value." 383 U.S. at 418. The *Memoirs* definition was never approved by a majority of the Court, and for a period thereafter the Court disposed of obscenity cases by *per curiam* opinions without attempting to formulate a definition which reconciled the divergent viewpoints. This practice was terminated in 1973 by *Miller v. California, supra,* in which a majority of five members announced the definition of obscenity to which the Court continues to adhere, though still by a bare majority and with some modification.

In *Miller,* the Court declared that a state statute designed to regulate obscene materials must be limited in its application to works which meet standards which the Court expressed as follows:

The basic guidelines for the trier of fact must be: (a) whether "the average person, applying contemporary

community standards" would find that the work, taken as a whole, appeals to the prurient interest, *Kois v. Wisconsin, supra* at 230, quoting *Roth v. United States supra,* at 489; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. We do not adopt as a constitutional standard the *"utterly* without redeeming social value" test of *Memoirs v. Massachusetts, supra,* at 459-460 (Harlan, J., dissenting); *Jacobellis v. Ohio,* 378 U.S., at 204 (Harlan, J., dissenting); *New York Times Co. v. Sullivan,* 376 U.S. 254, 284-285 (1964); *Roth v. United States, supra,* at 497-498 (Harlan, J., concurring and dissenting).

We emphasize that it is not our function to propose regulatory schemes for the States. That must await their concrete legislative efforts. It is possible, however, to give a few plain examples of what a state statute could define for regulation under part (b) of the standard announced in this opinion, *supra:*

(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.

(b) Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals. (413 U.S. at 25)

The last term of the Court saw a significant modification of part (b) of the *Miller* standards, that which requires that the sexual conduct which may not be described or depicted be "specifically defined by the applicable state law." In *Ward v. Illinois,* U.S. (1977), the Court had before it a state statute which contained no specific definition of the sexual conduct forbidden to be depicted or described. It was held sufficient in order to avoid overbreadth that the *Miller* standards, together with the two examples above quoted from *Miller* of the kinds of sexual conduct which may not be represented or depicted, had been incorporated into the sta-

tute by prior decisions of the state supreme court. Clearly, sexual conduct no longer needs to be "specifically defined by the applicable state law" in order that the statute will not be regarded as unconstitutionally overbroad. This case requires detailed consideration.

The Illinois statute considered in *Ward* forbade the sale of obscene matter and defined "obscene" as follows:

> A thing is obscene if, considered as a whole, its predominant appeal is to prurient interest, that is, a shameful or morbid interest in nudity, sex or excretion, and if it goes substantially beyond customary limits of candor in description or representation of such matters. A thing is obscene even though the obscenity is latent, as in the case of undeveloped photographs.

*Ward* attacked the statute as overbroad on the ground that it did not satisfy the tripartite standards announced in *Miller* as delimiting the outermost reach of permitted obscenity regulation. The *Miller* standards, the Court had said, must be met by a state law that regulates obscenity, "as written or authoritatively construed." In *People v. Ridens*, 59 Ill. 2d 362, 321 N.E. 2d 264 (1974), the Illinois Supreme Court had considered the appeal of a defendant charged with violating the statute under which *Ward* was later charged. In an earlier appeal of that defendant in the same case, the Illinois court had construed the statute to provide the tests of obscenity announced by the Supreme Court in *Roth v. United States*, *supra*, and had affirmed the conviction. That case was pending before the Supreme Court when it announced its opinion in *Miller*, and was subsequently remanded for further consideration in light of *Miller*. In its post-*Miller* consideration of the appeal, the Illinois court appears to say (it was so understood by the Supreme Court in *Ward*) that the standards announced in *Memoirs v. Massachusetts*, *supra*, had earlier become a part of the statute as an elaboration of the *Roth* standards. The Illinois court thereupon construed the statute to incorporate parts (a) and (b) of the *Miller* standards but to retain part (c) of the *Memoirs* standards, and affirmed. 321 N.E.2d at 269-70.

With this history, the Supreme Court in *Ward* was readily able to see compliance by the Illinois statute with the tripartite *Miller* standards (part (c) of the *Memoirs* standards as incorporated into the statute being more restrictive), but was troubled by the mandate expressed in *Miller* that the offensive work depict or describe "sexual conduct specifically defined by the applicable state law." Specific definition was clearly lacking in the statute and did not appear from anything expressly said by the Illinois court. Nevertheless, the Court concluded that the plain intent of the Illinois court to conform Illinois law to part (b) of the *Miller* standards must be seen as including as well an intent to adopt the two examples given in *Miller* of what a state statute could define for regulation under part (b). Finally and significantly, the Court concluded that incorporation of the two examples into the Illinois statute satisfied the requirement that the sexual conduct be specifically defined by state law, thus importantly modifying the *Miller* mandate.

*Ward* charts a course for state courts to follow in order to avoid overbreadth in statutes which regulate obscenity or pornography. The history of the Illinois statute above reviewed appears to encompass three judicial modifications of the statute, to incorporate successively the *Roth, Memoirs* and *Miller* standards. Characterization of this process as statutory construction raises semantic problems. The process is not invalidated merely by misnomer, however. An announcement by this court that § 1210(5) will be applied so as to avoid infringement on constitutional liberties would merely put into words the restraint on the statute's application imposed by the First Amendment.

A number of state courts have announced their construction of state statutes to bring them into conformity with the limiting standards laid down in *Miller*. In many such decisions, the limiting construction placed on the statute was made effective in the case before the court and presumably also with respect to other offenses previously committed. *See State ex Rel. Field v. Hess*, 540 P. 2d 1165 (Okla. 1975), *State v. American Theatre Corp.*, 194 Neb. 84, 230 N.W.2d 209 (1975); *State v. Bryant*, 285 N.C. 27, 203 S.E.2d 27 (1974),

*State v. A Motion Picture Entitled "The Bet"*, 219 Kan. 64, 547 P.2d 760 (1976), *People v. Heller*, 33 N.Y.2d 314, 352 N.Y.S.2d 601, 307 N.E.2d 805 (1973); *State v. J-R Distributors*, Inc., 82 Wash. 2d 584, 512 P.2d 1049 (1973), *cert. denied*, 418 U.S. 949 (1974); *Price v. Commonwealth*, 214 Va. 490, 201 S.E.2d 798, *cert. denied*, 419 U.S. 902 (1974). Some courts, while undertaking to provide a limiting construction which made the statute constitutionally applicable to offenses committed thereafter, have seen due process difficulties in the way of applying the limiting construction retroactively. *See State v. Welke*, 298 Minn. 402, 216 N.W. 2d 641 (1974); *State v. De Santis*, 65 N.J. 462, 323 A.2d 489 (1974); *State v. Harding*, 114 N.H. 335, 320 A.2d 646 (1974). Other courts have seen the task of providing the limiting construction needed to bring the particular state statute into conformity with *Miller* as one which only the legislature should perform. *See, People v. Tabron*, 544 P.2d 372 (Colo. 1976); *Commonwealth v. Horton*, 365 Mass. 164, 310 N.E. 2d 316 (1974); *Mohney v. State*, 261 Ind. 56, 300 N.E. 2d 66 (1973); *State v. Wedelstedt*, 213 N.W.2d 652 (Iowa 1973); *State v. Shreveport News Agency, Inc.*, 287 So.2d 464 (La. 1973), *cert. denied*, U.S. ; *Commonwealth v. MacDonald*, 464 Pa.435, 347 A.2d 290 (1975), *cert. denied*, 429 U.S. 816 (1976); *Art Theatre Guild, Inc. v. State ex rel Rhodes*, 510 S.W.2d 258 (Tenn. 1974).

We are concerned in this part of our opinion only with the question of overbreadth and have deferred to part III the due process question of fair notice or vagueness. A construction which merely confines the statute before us to its constitutional limits does not implicate the right of the accused to receive fair notice that his acts were among those intended to be prohibited by the statute, and no constitutional right of anyone who may have offended against the broader prohibition expressed in the statute is violated by excluding his acts from the prohibition of the statute as subsequently construed. Nor do we view such a limitation of the statute so as to affect only that part of the described conduct which the legislature constitutionally could regulate as an invasion of the legislature's prerogative, since there is no doubt of the

legislature's intent to regulate what remains within the statutory prohibition. We have no difficulty in giving retroactive effect, as excluding the possibility of overbroad application of the statute, to the construction which we now give it.

We therefore construe HRS § 712-1210(5) by incorporating parts (a) and (b) of the *Miller* standards above quoted, together with the two examples, also quoted above, of what may be defined for regulation under part (b) of those standards, which shall be taken as examples of the kinds of sexual conduct the depiction or representation of which is defined by § 1210(5) as pornographic.[1] The effect of this construction is to limit the definition of pornographic materials or performances contained in § 712-1210(5) to the sort of representations or descriptions of specific "hard core" sexual conduct given as examples in *Miller*, i.e., patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated, and of masturbation, excretory functions, and lewd exhibition of the genitals.[2] Of course, the tripartite test set forth in § 712-1210(5)(a), (b) and (c) must also be met in order for any material or performance

---

[1] Sections 1214(1)(a) and 1210(5) were enacted prior to *Miller* and without anticipation of the requirement of specificity announced in *Miller*. It is true that HRS §§ 712-1210 to 1216, inclusive, were cited in *Miller* as an example of a state law which is "directed at depiction of defined physical conduct; as opposed to expression." 413 U.S. at 24, n. 6. But § 1210(5) consists of a virtual paraphrase of the *Memoirs* standards which the Court found deficient in *Miller* and cannot have been the subject of the Court's comment. The occasion for the comment was obviously §§ 1210(7), (8) and (9), which read:

(7) "Sexual conduct" means acts of masturbation, homosexuality, bestiality, sexual intercourse or physical contact with a person's clothed or unclothed genitals, pubic area, buttocks, or the breast or breasts of a female for the purpose of sexual stimulation, gratification, or perversion.

(8) "Sexual excitement" means the condition of the human male or female genitals when in a state of sexual stimulation or arousal.

(9) "Sadomasochistic abuse" means flagellation or torture by or upon a person as an act of sexual stimulation or gratification.

§§ 1210(7), (8) and (9) define terms used in § 1210(6), which in turn defines "pornographic for minors". The specificity provided by these definitions, however useful under § 1210(6), provides no support for § 1210(5) in which the defined terms are not used.

[2] *Cf. Jenkins v. Georgia*, 418 U.S. 153, 161 (1974): "[N]udity alone is not enough to make material legally obscene under the *Miller* standards."

to be found to be pornographic within the meaning of § 712-1214. As in the case of the Illinois statute upheld in *Ward*, § 712-1210(5)(c) incorporates part (c) of the *Memoirs* standards and, being more restrictive than is required by *Miller*, needs no further restriction to comply with *Miller*. *Hamling v. United States*, 418 U.S. 87, 116 (1974). Appellant's First Amendment claim is thus disposed of, on the authority of *Ward*.

II

Appellant contends that Article I, Section 3 of the Hawaii Constitution provides the all-inclusive protection of pornography which the United States Supreme Court denies under the First Amendment. We have said that "the Hawaii Supreme Court, as the highest court of a sovereign state, is under the obligation to construe the state constitution, not in total disregard of federal interpretations of identical language, but with reference to the wisdom of adopting those interpretations for our state." *State v. Texeira*, 50 Haw. 138, 142 n. 2, 433 P.2d 594, 597, n. 2 (1967). And "[w]e have not hesitated in the past to extend the protections of the Hawaii Bill of Rights beyond those of textually parallel provisions of the Federal Bill of Rights when logic and a sound regard for the purposes of those protections have so warranted." *State v. Kaluna*, 55 Haw. 361, 369, 520 P.2d 51, 58 (1974). It is incumbent upon us, therefore, to consider whether the depiction or representation of sexual matters is given greater protection under the Hawaii Constitution than under the limitations of the protections of the First Amendment which the United States Supreme Court has formulated in respect of obscene utterances.

As we have pointed out, the Hawaii Constitution extends to speech a constitutional protection expressed in language identical to that contained in the United States Constitution, which language was dealt with in *Roth*. The question whether obscenity was within the area of protected speech was presented squarely to the Supreme Court for the first time in *Roth*, although expressions in prior opinions of the Court had

indicated its assumption that obscenity was not so protected. When the Hawaii Constitution became the organic law of the State in 1959, *Roth* constituted the definitive interpretation of the borrowed language in Article I, Section 3.

Appellant urges, in effect, that the relationship of obscenity to the guaranty of free speech contained in Article I, Section 3 of the Hawaii Constitution should be adjudged upon the same arguments presented in *Roth,* as though we were as free to seek out the appropriate balance between the conflicting social interests as the Supreme Court was in its deliberations in that case. We are conscious of the force of some of the arguments which were, in *Roth,* rejected to the subsequent regret of the author of the majority opinion. See the dissenting opinion of Justice Brennan in *Paris Adult Theatre I v. Slaton,* 413 U.S. 49 (1973). However, we are not free to disregard the resolution of the issue reached in *Roth*. To do so it would be necessary for us to conclude that the intention of those who adopted the Hawaii Constitution was to effect a drastic change in the scope of application of a penal law on a subject of widespread public concern, without any semblance of public debate. Prior to statehood, § 267-8, RLH 1955, prohibited the dissemination of obscenity. Because the First Amendment, as interpreted by the Supreme Court, defined the limits of protected free speech, § 267-8 constitutionally regulated obscenity as defined in *Roth*. Were we to entertain now an argument which extends the protection of the Hawaii Constitution to such utterances, we would be accepting the hypothesis that § 267-8 became substantially a nullity with statehood. All the evidences of intent are to the contrary. We conclude that obscenity was intended to remain subject to regulation at least to the same extent after statehood as before.

It is not necessary for us to decide in this case whether the language which the Hawaii Constitution borrowed from the United States Constitution must be read as interpreted in *Roth*. It is sufficient for the purposes of this case to conclude, as we do, that speech which is protected by Article I, Section 3 of the Hawaii Constitution does not include matter which constitutes unprotected obscenity under the First Amend-

ment, as more restrictively defined in the current United States Supreme Court decisions to which we have referred in Part I. Just where the line between protected speech and obscenity should be drawn for the purposes of the Hawaii Constitution, and whether it is located elsewhere than under the First Amendment, may be left for determination when the occasion arises. The statute under which Appellant has been charged is limited in its application, both by the definitions contained in HRS § 712-1210(5) and the construction we have placed upon it in this case, to utterances which constitute unprotected obscenity under the restrictive definitions articulated in those Supreme Court decisions. It follows that the statute is not overbroad under the Hawaii Constitution and Appellant's attempt to show facial invalidity fails.

## III

A penal statute which "neither gives fair notice to a person what conduct is prohibited nor prescribes fixed standards for adjudging guilt when that person stands accused" denies the accused due process of law. *State v. Grahovac,* 52 Haw. 527, 535, 480 P.2d 148, 153 (1971). The rationale of this rule was well expressed in *Grayned v. City of Rockford,* 408 U.S. 104, 108 (1971):

It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of

arbitrary and discriminatory application. Third, but related, where a vague statute "abut[s] upon sensitive areas of basic First Amendment freedoms," it "operates to inhibit the exercise of [those] freedoms." Uncertain meanings inevitably lead citizens to "'steer far wider of the unlawful zone' . . . than if the boundaries of the forbidden areas were clearly marked."

Appellant claims § 1214(1)(a), under which he was charged, is impermissibly vague on its face by reason of the inadequacy of the definition of "pornographic material" contained in § 1210(5). On the record before us, which does not reveal what was contained in the movie film which Appellant is charged with selling, the question necessarily becomes whether the statute adequately describes *any* material with sufficient specificity to support a conviction. Overbreadth and other First Amendment grounds having been disposed of, we are not concerned here with the question addressed in parts I and II, being whether the statutory description may also embrace other material which cannot constitutionally be regulated.

In moving from consideration of the doctrine of overbreadth to consideration of that of vagueness, certain similarities and differences between these doctrines should be noticed. A statute may be overbroad because its vagueness extends its reach too far, and yet it may define the core of its coverage with sufficient specificity to avoid challenge for facial vagueness. *Parker v.* Levy, 417 U.S. 733, 756 (1974). And of course an adequately specific statute may be overbroad. *Grayned v. City of Rockford, supra,* at 114. Conversely, a statute may be impermissibly vague without any question arising of overbreadth. *Hynes v. Mayor of Oradell,* 425 U.S. 610 (1976). Thus sufficient specificity to avoid overbreadth is not a necessary assurance against vagueness, and the limiting construction which we placed on § 1210(5) in part I of this opinion would not necessarily defeat a vagueness challenge even if constitutionally applicable retroactively for that purpose.

In *Grayned v. City of Rockford, supra,* three important values are enumerated which a vague penal statute may

offend. Our first concern is with the need that the law "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." If this need is satisfied, the likelihood that the need of adequate standards for administration of the law will not also be met is so remote that this value does not require separate consideration. We will deal later with the third value enumerated in *Grayned,* that of avoiding inhibition of the exercise of First Amendment freedoms. We turn, therefore, to the question whether the statute, as written, defined pornographic materials with sufficient specificity to give Appellant fair notice that materials which fall within the limiting construction which we have placed on the statute are regulated.

We have dealt with the requirements of specificity laid down in *Miller* in the context of the overbreadth doctrine. The *Miller* court seemed to require, or at least to emphasize, greater specificity to meet the due process of requirement of fair notice than it demanded to avoid overbreadth. The limitations which we have incorporated into § 1210(5) in Part I of this opinion confine the definition of pornographic materials to those which are of the same *kind* as the specific examples given in. *Miller* of "what a state statute could define for regulation". But *Miller* goes on to declare:

> Under the holdings announced today, no one will be subject to prosecution for the sale or exposure of obscene materials unless these materials depict or describe patently offensive "hard core" sexual conduct specifically defined by the regulating state law, as written or construed. We are satisfied that these specific prerequisites will provide fair notice to a dealer in such materials that his public and commercial activities may bring prosecution. 413 U.S. at 27.

In its application by the Court, the *Miller* standard of specificity has not supported attempts to avoid prosecution on grounds of statutory vagueness. During its next term after that in which *Miller* was decided, in *Hamling* v. *United States, supra,* the Court affirmed a conviction under Title 18, U.S.C. § 1461, which statute prohibited the use of the mails for any "obscene, lewd, lascivious, indecent, filthy or vile

articles." The conviction had occurred prior to *Miller*. It was argued that § 1461 had not contained the *Miller* language and had not been construed to apply to the specific types of sexual conduct referred to in *Miller*, and was therefore unconstitutionally vague as applied to the petitioners. This contention was met by holding the statute "to be limited to the sort of patently offensive representations or depictions of that specific 'hard core' sexual conduct given as examples in *Miller v. California*." 418 U.S. at 114. The generic terms used in the statute were held to be sufficient to give notice that the distribution of the material before the Court had been proscribed, which notice was merely made more specific by the limiting construction placed on the statute in compliance with *Miller*.

State courts assumed, after *Hamling*, that no more was required to satisfy the *Miller* requirement of fair notice than a construction of the statute which limited it to the hard core sexual conduct encompassed by the *Miller* standards and examples. *Cf. Bloom v. Municipal Court*, 16 Cal.3d 71, 127 Cal. Rptr. 317, 545 P.2d 229 (1976). This assumption was confirmed in *Ward v. Illinois, supra*. In *Ward*, the claim that the Illinois statute was vague because of noncompliance with the specificity requirements of *Miller* was labelled "wholly without merit" for the alternative reasons that the Illinois court had incorporated the *Miller* examples into the statute and that sado-masochistic materials of the kind before the Court had been held to be proscribed by the statute. The Court said: "Given that Illinois has adopted *Miller's* explanatory examples, what the State has done in attempting to bring its statute in conformity with *Miller* is surely as much as this Court did in its post-*Miller* construction of federal obscenity statutes" (citing Hamling).　　U.S. at

Thus the notice requirement of *Miller*, as is acknowledged in Justice Stevens' dissent in *Ward*, is now substantially lifeless and is met for all purposes by the limiting construction which we have placed on § 712-1210(5) in this case. *Hamling* makes it abundantly clear that whatever standard of specificity is ultimately held to satisfy the requirements of *Miller*, the standard is no longer to be read as one of

fair notice or warning to the prospective offender. In *Hamling*, specificity was introduced into the statute by a limiting construction after the commission of the offense for which the defendant then before the court had been charged. Despite the language used in *Miller*, the court in *Hamling* found sufficient specificity for fair notice in the generic terms used in the statute. The generic terms used in § 712-1210(5) are certainly narrower and more specific than those which were used in the statute construed in *Hamling* and which were there held sufficient to warn that the more specifically described materials were proscribed. Even in *Miller*, where the requirement of specificity was first expressed, the case was remanded to permit the state court to provide the necessary specificity, without concern for any lack of fair warning to the defendant whose conviction for an offense which predated the limiting construction was thus affirmed, and whose appeal thereafter was dismissed by the Supreme Court for want of a substantial federal question. *Miller v. California*, 418 U.S. 915 (1974). The decisions of the United States Supreme Court are conclusive with respect to the protections afforded by the federal constitution. We conclude that Appellant cannot claim a lack of due process under the Fourteenth Amendment by reason of vagueness in the statute under which he has been charged.

There remains for consideration whether the due process requirements of the Hawaii Constitution should lead to a different result. The analysis in Part II provided us with the conclusion that the protection of speech in the Hawaii Constitution is subject to the exclusion of obscenity announced in *Roth v. United States, supra*. *Roth* dealt both with 18 U.S.C. § 1461, the statute subsequently involved in *Hamling*, and a California statute which prohibited "wilfully and lewdly" distributing "any obscene or indecent writing." These statutes were attacked in *Roth* for vagueness in failing to provide "reasonably ascertainable standards of guilt." It was held that the statutes, applied according to the standards for judging obscenity announced in *Roth*, provided adequate notice of what was prohibited. We have often looked to federal case law for guidance in interpreting provisions of the Hawaii

Constitution which are modelled on those of the United States Constitution. *See State v. Pokini,* 45 Haw. 295, 308, 367 P.2d 499, 506 (1961); *State v. Wong,* 47 Haw. 361, 385, 389 P.2d 439, 452 (1964); *State v. Shak,* 51 Haw. 612, 615, 466 P.2d 422, 424 (1970); *State v. Kahalewai,* 54 Haw. 28, 30, 501 P.2d 977, 979 (1972); *Harada v. Burns,* 50 Haw. 528, 532, 445 P.2d 376, 380 (1968). *Roth* defined the specificity needed to comply with the due process requirements of the United States Constitution, in a regulation of obscenity, at the time the parallel provisions of Article I, Section 4 of the Hawaii Constitution were adopted. A persuasive argument can be made that the standards of specificity defined in *Roth* should be applied in determining compliance of an obscenity regulation with the due process requirements of the Hawaii Constitution. However, we do not place our conclusion solely upon that ground.

Eloquent arguments have been advanced for the view that the independent judgment we are obligated to exercise in applying the due process requirements of the Hawaii Constitution requires us to discard as poorly reasoned the decisions of the United States Supreme Court on this question, and to hold that constitutionally acceptable notice is not given to affected individuals by the sort of definition contained in § 712-1210(5). A particularly forceful presentation of these arguments is contained in Justice Tobriner's dissent in *Bloom v. Municipal Court, supra.* As is said there, "a civilized society does not imprison a person for violating prohibitions on conduct that cannot even be defined." 545 P.2d at 239. The joinder of four Justices in Justice Stevens' dissent in *Ward v. Illinois, supra,* evidences the depth of disagreement on the Supreme Court. The somewhat mechanical reasoning in support of the conclusion suggested in the preceding paragraph is, without more, an insufficient response to this challenge. We are led to accept that conclusion, and to concur in the concededly unsatisfactory treatment of this problem by the Supreme Court and by the great majority of the state courts, by additional considerations which seem to us to be controlling.

The problems of fair notice and the other aspects of the vagueness doctrine are inescapably linked to the status of

obscenity as an exception from protected speech. Justice Tobriner contends that "no definition of obscenity calculated to curtail the flow of material to consenting adults can be framed within the permissible scope of the vagueness doctrine." 545 P.2d at 242. But this is to say that the exclusion of obscenity from protected speech is a fallacy, because what is unprotected is undefinable. Whether such an exclusion should exist has been strenuously debated. The difficulty of defining what is unprotected is a weighty consideration in that debate. Once the debate has been resolved in favor of the exclusion, however, recognition has been given to a substantial interest of society in regulating the flow of obscene material, an interest of such importance that fundamental interests in freedom of speech have been subordinated to it.

Vagueness is concededly a relative concept. When the First Amendment is not implicated, a notably less stringent degree of specificity is commonly accepted, as is exemplified in the noise ordinance upheld in *Grayned v. City of Rockford, supra*. The greater specificity demanded when First Amendment values are present cannot give those values such overriding importance as to destroy competing values which society is entitled to implement. The exclusion of obscenity from the protection given to speech establishes the social value implemented by regulations of obscenity on a level which secures it against erosion by a vagueness doctrine designed to protect the competing interest in freedom of speech. Thus in *Roth v. United States, supra,* when the Court looked for a precedent which defined the standard of specificity to be applied to an obscenity regulation, it found it in *United States v. Petrillo, supra*. In that case, no regulation of speech was involved and a statute forbidding the use of coercion to compel the employment of more persons than were "needed . . . to perform actual services" was held "to give sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." 332 U.S. at 8. The *Roth* court applied that standard, rather than the stricter standard of First Amendment cases, to the obscenity regulation before it. Similarly, in *Young v. American Mini Theatres*, 427 U.S. 50 (1976), where the chal-

lenged ordinance regulated the exhibition of sexually explicit movies, the plurality opinion rejects a vagueness challenge on the authority of *Parker v. Levy, supra,* in which the Court upheld a section of the Code of Military Justice as sufficiently specific and rejected as inapplicable the standards of First Amendment cases.[3]

In sum, these considerations persuade us that, in appraising a vagueness challenge to a regulation of pornography in light of the due process requirements of the Hawaii Constitution, we should follow the same precedents as have been chosen by the United States Supreme Court in its determination of challenges under the Fourteenth Amendment.[4] The criteria by which we should judge the adequacy of the notice given by the statute are those applicable when First Amendment concerns are not present, rather than the stricter criteria which have been evolved for statutes which regulate speech. Whether or not there may be difficulty in determining whether marginal conduct is within the proscription of the

---

[3] In *American Mini Theatres,* Justice Stevens says, writing for the plurality:

The only area of protected communication that may be deterred by these ordinances comprises films containing material falling within the specific definitions of "Specified Sexual Activities" or "Specified Anatomical Areas." The fact that the First Amendment protects some, though not necessarily all, of that material from total suppression does not warrant the further conclusion that an exhibitor's doubts as to whether a borderline film may be shown in his theater as well as in theaters licensed for adult presentations, involves the kind of threat to the free market in ideas and expression that justifies the exceptional approach to constitutional adjudication recognized in cases like *Dombrowski v. Pfister,* 380 U.S. 479. (427 U.S. at 61)

This statement, although not joined in by a majority in this instance, seems to explain the Court's consistent rejection of vagueness challenges to obscenity regulations.

[4] We do not imply that, for the purposes of the due process requirements of the Hawaii Constitution, facial vagueness (as distinguished from overbreadth) could be cured retroactively merely by judicially limiting the statute to its constitutionally permitted reach, if that be the correct reading of *Ward v. Illinois, supra.* The effect of our construction of the statute in this case is that the conduct for which Appellant may be convicted must fall within the limitations of that construction. Our present inquiry is whether, if such conduct is shown, there was fair warning in the language of the statute, without benefit of the present construction, that such conduct could result in prosecution.

462

statute under which Appellant has been charged, the statute gave fair warning that Appellant would be subject to prosecution for distribution of the "hard core" pornography to which it is limited by our construction in this case. *Cf. State* v. *Taylor*, 49 Haw. 624, 425 P.2d 1014 (1967). We conclude that Appellant was given fair notice in satisfaction of the due process requirements of both the United States and the Hawaii Constitutions.

The judgment is affirmed and the case is remanded for further proceedings consistent with this opinion.

*Myer C. Symonds (Bouslog & Symonds* of counsel) for Appellant

*Randolph Slaton,* Deputy Prosecuting Attorney, *(Lawrence S. Grean,* Deputy Prosecuting Attorney, on the brief), for Appellee