STATE OF HAWAII, Plaintiff-Appellee *v.* DIANA K. MARTINEZ, Defendant-Appellant

NO. 6003

JULY 21, 1978

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR AND KIDWELL, JJ.

OPINION OF THE COURT BY KIDWELL, J.

Appellant was convicted of possession of marijuana on the basis of evidence obtained when she was searched by prison officials as a condition of entry to the prison. The appeal challenges, on constitutional grounds, both the admissibility of the evidence obtained by the search and the validity of a condition upon which appellant was granted probation. We affirm.

I

Appellant sought entry to Hawaii State Prison ("the prison") to visit a prisoner. After she entered the prison, appellant was taken to a room where she was left alone with a prison matron. The matron patted down appellant's upper body, including inserting her hands into appellant's bra. Without first patting appellant down between the legs, the matron pulled down appellant's panties and saw between her legs a plastic packet in which vegetable matter was visible. The packet was seized and subsequently found to contain marijuana.[1]

---

[1] Appellant has challenged only the body search which discovered the packet, and has not contended that the opening of the packet and the analysis of its contents were improper in themselves. In *State v. Kaluna*, 55 Haw. 361, 520 P.2d 51 (1974), the opening of a packet found on an arrestee during a lawful pre-incarceration search was held to be without justification. As we said there, however, it would have been proper for the police matron to open the packet if there had been probable cause to believe that it contained unlawful drugs. 55 Haw. at 373, n. 9. No question having been raised, we assume that the visibility of the contents of the packet provided such probable cause in this case.

The matron testified that although she noticed signs of drug intoxication in appellant's appearance and behavior, her decision to subject appellant to a strip search was non-discretionary and was based on "rules and regulations" of the prison. No formal rule of the prison requiring such a search has been brought to our attention. Prior to the search in question, however, the matron had thoroughly searched forty or more women, removing the panties of those who, like appellant, were wearing loose clothing. There is also uncontradicted evidence in the record, contained in the testimony of the matron, that the matron had strip searched appellant in a manner similar to the present case on several previous visits by appellant to the prison.

We recently stressed the importance of institutional order and security at the prison in *Holdman v. Olim*, 59 Haw. 346, 581 P.2d 1164 (1978). In *Holdman*, citing a line of decisions by the United States Supreme Court, we found that maintenance of order at the prison is a vital State goal, that institutional security is central to all other prison goals, and that such security considerations justify restrictions on visitation. We also there recognized that wide-ranging deference is given to prison administrators in exercising their discretion to maintain institutional order and security. *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119 (1977); *Procunier v. Martinez*, 416 U.S. 396 (1974); *Pell v. Procunier*, 417 U.S. 817 (1974).

The standards by which any governmental search is to be judged is always its reasonableness, in light of the constitutional guarantee of freedom from unreasonable searches and seizures. Reasonableness, of course, varies with the circumstances. What is reasonable restraint and search "depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975), quoted in *State v. Bonds*, 59 Haw. 130, 134, 577 P.2d 781, 784 (1978). Thus the search of an individual in connection with a temporary investigative stop may ordinarily not go beyond a patting down of the detainee's outer clothing to discover the presence

of a weapon, *Terry v. Ohio*, 392 U.S. 1 (1968), and then only where particular facts support an inference that the detainee is armed and dangerous. *Sibron v. New York*, 392 U.S. 40 (1968). But where the weight of the public interest is greater, as in the enforcement of laws against smuggling of contraband at border entry points, mere suspicion or less will sustain such a pat-down search. *United States v. Rivera-Marquez*, 519 F.2d 1227 (9th Cir. 1975). Yet for a strip search of the body of a traveller to be reasonable, it has been held that there must be "subjective suspicion supported by objective, articulable facts that would reasonably lead an experienced, prudent customs official to suspect that a particular person seeking to cross our border is concealing something on his body for the purpose of transporting it into the United States contrary to law." *United States v. Guadalupe-Garza*, 421 F.2d 876 (9th Cir. 1970). And a search that extends into body cavities has been held to require more, in that there must be a clear indication or plain suggestion that contraband may be located in a body cavity. *Henderson v. United States*, 390 F.2d 805 (9th Cir. 1967); *United States v. Sosa*, 469 F.2d 271 (9th Cir. 1972).

Appellant seeks to apply here the standards developed by the Ninth Circuit Court of Appeals for judging the reasonableness of border searches. They are not automatically transferable to the situation before us. Comparing standards developed for persons crossing streets with those to be applied to persons crossing borders, the court said in *United States v. Guadalupe-Garza, supra:*

> "In either context, official action must meet the standard of reasonableness. The scope of the particular intrusion, the manner of its conduct, and the justification for initiating it must all be considered. The test of reasonableness is incapable of comprehensive definition or of mechanical application; in each case the need for the particular search is balanced against the invasion that the search entails." 421 F.2d at 878.

A similar balancing is necessary to arrive at an appropriate measure of the search which may reasonably be imposed upon a prison visitor. Authority is scanty. The extreme

step of body cavity search has been held to lie within the sound discretion of prison officials and not necessarily to be unreasonable as applied to convicted prisoners entering or leaving the prison. *Daugherty v. Harris*, 476 F.2d 292 (10th Cir. 1973); *Hodges v. Klein*, 412 F. Supp. 896 (D.N.J. 1976); *Penn El v. Riddle*, 399 F. Supp. 1059 (E.D. Va. 1975). Even pretrial detainees, who may be treated as prisoners only to the extent the security, internal order, health and discipline of the prison demand, have been held subject to strip search upon return from court appearances, *Bell v. Manson*, 427 F. Supp. 450 (D. Conn. 1976), or after personal visits, *Giampetruzzi v. Malcolm*, 406 F. Supp. 836 (S.D.N.Y. 1975), although we have said that the pre-incarceration search of an arrestee should be no broader than necessary in light of the reasons for the search. *State v. Kaluna*, 55 Haw. 361, 373, 520 P.2d 51, 61 (1974). In *Gettleman v. Werner*, 377 F. Supp. 445 (W.D. Pa. 1974), a strip search of a former prison employee was upheld where he had recently transferred contraband to an inmate. None of these cases involved strictly a prison visitor. In *Black v. Amico*, 387 F. Supp. 88 (W.D.N.Y. 1974), a strip search of a prison visitor was enjoined, in the absence of real suspicion, where the visitor was viewed as exercising a right to confer with codefendants and witnesses in the preparation of his defense to a criminal charge. And in *People v. Thompson*, 523 P.2d 128 (Colo. 1974), bottles of whiskey found in the search of a prison visitor were suppressed in the absence of a showing of probable cause or of consent to search obtained pursuant to posted rules as a condition of exercising the privilege of entering the prison.

We consider that a fundamental difference exists between the detention and search of an individual engaged in the exercise of a constitutional or statutory right, such as travel on city streets or across the border, and search without detention imposed as a condition of admission of the individual into a prison. In the first case, the liberty interest and expectation of privacy of the individual are substantially unaffected by the activity engaged in, and the burden is heavy upon government to justify the invasion. But appellant has not suggested that she possessed a constitutional or statutory

right to enter the prison. The implication is strong from the record that she applied for entry with awareness that she would be routinely subjected to a strip search. To have avoided the search appellant need only have refrained from seeking admission, a situation far different from being, in the course of otherwise lawful travel, intercepted and forced to undergo search as a condition to continuing that travel.

In *United States v. Sihler,* 562 F.2d 349 (5th Cir. 1977), a prison employee was found to have consented to a search by entering the prison in the face of a sign which advised that all who entered were subject to routine search. Appellant's consent to her search is equally established in the present case, and the reasonableness of the search must be judged in the light of that circumstance.

Without suggesting that the constitutional protections of prison visitors may not exceed those enjoyed by prison inmates, we consider that an individual who seeks entry into a prison in a purely personal capacity may not claim immunity from security measures which are reasonable as applied to the prison inmates. *Cf. Lanza v. New York,* 370 U.S. 139 (1962). The risk of introduction of contraband by way of the unsearched visitor would appear to be substantially as great as by way of the unsearched inmate. There is no evidence that the search procedure to which appellant was subjected was carried out in an oppressive or discriminatory manner. We conclude that valid reasons existed for the search of appellant's person and that the search was not more intrusive than was necessary in light of those reasons. Appellant was not entitled to suppression of the evidence obtained as a result of the search.

II

Appellant also challenges a condition attached to her probation by the trial judge, *i.e.,* that she "refrain from the company of people of questionable character". She argues that this condition, which is essentially a restatement of the condition that the defendant refrain from "consorting with

disreputable persons" specifically authorized by HRS § 706-624(2)(f), is vague and overbroad and infringes on rights preserved to her by the First and Fourteenth Amendments of the United States Constitution.

Appellant's personal relationships could be considered by the trial judge in setting sentence, as one of the many factors the court may consider in inquiring into the character and circumstances of a convicted offender. *Williams v. New York,* 337 U.S. 241 (1949); *State v. Nobriga,* 56 Haw. 75, 527 P.2d 1269 (1974). The court has wide discretion, based on its assessment of the character and circumstances of a convicted defendant, in deciding whether to grant probation and in imposing conditions to probation. *State v. Huggett,* 55 Haw. 632, 525 P.2d 1119 (1974). "It is also clear that the court has the power to restrict the probationer's association with groups that would palpably encourage him to repeat his criminal conduct." *Porth v. Templar,* 453 F.2d 330, 334 (10th Cir. 1971).

If the challenged conditions had been embodied in a penal statute, so that the proscribed conduct was defined only as "keeping company with people of questionable character", our first task would have been to ascertain whether the statute gave fair notice of what conduct was prohibited. Since appellant challenges the condition in advance of any attempt to enforce its provisions, the question would have been whether the language used to designate the prohibited conduct adequately described any conduct with sufficient specificity to support a conviction. *State v. Manzo,* 58 Haw. 440, 455, 573 P.2d 945, 955 (1977). If it met that test, the statute would not fail for vagueness. But if the description of the proscribed conduct were seen to be so broad that it embraced conduct protected by the First Amendment the challenge would still be successful under the doctrine of overbreadth, even though unprotected conduct was also within the reach of the statute. On the other hand, absent First Amendment considerations, the statute could not be successfully challenged upon the ground that it might be applied unconstitutionally if a constitutional application were also possible. *State v. Manzo, supra,* 58 Haw. at 445, 573 P.2d at 949.

We have not been referred to any authority which extends the doctrine of overbreath to the conditions upon which probation has been granted. We think it is clear that probation may be granted upon conditions which restrain the defendant's association with other members of the community to an extent which could not validly be imposed by penal statutes upon persons who had not been convicted of crime. *Malone v. United States*, 502 F.2d 554 (9th Cir. 1974); *Porth v. Templar, supra*. See Note: Judicial Review of Probation Conditions, 67 Colum. L. Rev. 181, 202 *et seq*. (1967). It has been held that the conditions upon which a defendant is granted parole or probation may not validly restrain his exercise of speech and association without reasonable relationship to the objectives of his sentencing, but these cases deal with the restraint of specific conduct and do not suggest that overbreadth may cause the condition wholly to fail. *Sobell v. Reed*, 327 F. Supp. 1294 (S.D.N.Y. 1971); *Hyland v. Procunier*, 311 F. Supp. 749 (N.D. Cal. 1970). These interests cannot readily be weighed in the abstract, as would be necessary if we were to attempt to judge whether a probation condition might have an unduly overbroad application. In the absence of controlling authority, we decline to extend the doctrine of overbreadth to probation conditions.

Probation may be revoked, in the absence of conviction of another crime, only if the court is satisfied after notice and hearing "that the defendant has inexcusably failed to comply with a substantial requirement imposed as a condition" of the probation order. HRS § 706-628. It is manifest that a probation condition which is so vague that it fails to provide a guide for the defendant's behavior would not support a revocation of probation. *Cf. Glenn v. State*, 327 S.W.2d 763 (Tex. Cr. App. 1959); *Anderson v. State*, 73 S.E.2d 219 (Ga. App. 1952). On the other hand, the constitutional requirement of fair warning which is inherent in due process would equally be satisfied by a condition which met the requirement of the statute. *State v. Manzo, supra*. A question might well be raised whether the sufficiency of the probation condition is subject to question on an appeal from the judgment, as in this case, or only upon appeal from revocation of the probation.

We do not address that question, since we find the condition to be sufficiently specific on its face. Whether particular circumstances will support a revocation of appellant's probation for violation of the condition can be tested only in another proceeding.

The standard of specificity to be applied to the condition under appellant's facial challenge is whether there are any conceivable circumstances to which the condition applies with sufficient clarity to give appellant fair warning that her conduct may be in violation. Who are persons of "questionable character" may be difficult to determine in all circumstances but should present appellant with no difficulty in at least some situations. The term has a commonly understood meaning which clearly embraces persons who by reason of prior conviction or reputation are generally regarded as engaged in criminal activities. Certain individuals are commonly referred to in the media as leaders or members of the underworld. Appellant could not be aware of such notoriety without being aware that the character of such individuals is "questionable" within the meaning of the probation condition. We need not go further to establish that the condition is facially valid, leaving the perimeter of its meaning to be determined in any proceeding which may be instituted to revoke appellant's probation.

Affirmed.

*Renee M. L. Yuen,* Deputy Public Defender, for defendant-appellant.

*Kendall Wong (Roy K. S. Chang* on the brief), Deputy Prosecuting Attorneys, City and County of Honolulu, for plaintiff-appellee.