**Electronically Filed
Supreme Court
SCWC-30109
09-FEB-2015
09:05 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

STATE OF HAWAI'I,
Respondent/Plaintiff-Appellee,

vs.

RANGIE B. ALANGCAS,
Petitioner/Defendant-Appellant.

SCWC-30109

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(ICA NO. 30109; CR. NO. 09-1-0308)

February 9, 2015

RECKTENWALD, C.J., NAKAYAMA, McKENNA, AND POLLACK, JJ., AND
CIRCUIT JUDGE TO'OTO'O, ASSIGNED BY REASON OF VACANCY

OPINION OF THE COURT BY POLLACK, J.

Over the last fifteen years, states have struggled to
address internet solicitation of minors because traditional
attempt and solicitation statutes do not sufficiently address

internet activity.[1]  In response, "state legislatures have revised their criminal statutes to create a new species of crime called 'Internet luring,' or 'enticement.'"[2]  In 2002, Hawai'i enacted Hawai'i Revised Statutes (HRS) § 707-756, electronic enticement of a child in the first degree, to deter crimes against minors by prohibiting the use of an electronic device to "lure a minor to a meeting with intent to commit a felony."  H. Stand. Comm. Rep. No. 417, in 2002 House Journal, at 1399.

The appeal in this case challenges the constitutionality of HRS § 707-756 on overbreadth, vagueness, and dormant commerce clause grounds.  In resolving the constitutional challenges, we also determine the scope of the conduct prohibited by the electronic enticement statute.

---

[1]      Julie Sorenson Stanger, Salvaging States' Rights to Protect Children from Internet Predation: State Power to Regulate Internet Activity Under the Dormant Commerce Clause, 2005 B.Y.U. L. Rev. 191, 192 (2005); see also Danica Szarvas-Kidd, Electronic Luring Statutes Under Fire: How the Courts Have Responded to Constitutional Challenges and Notable Defenses to Luring Crimes, Prosecutor, July/August 2006, at 42 ("TO DATE, 40 states have enacted electronic luring statutes which criminalize the act of soliciting children online for illegal sex acts, and a multitude of case law has emerged as courts have struggled to interpret these statutes." (footnote omitted)).

[2]      Stanger, supra note 1, at 192.

## I. Background

### A. Facts[3]

Honolulu Police Department (HPD) Detective Andrew Brito created an online persona of a 14-year-old girl, Heather Cabico, with the screen name "kaplma_girl." On August 29, 2008, a user with the screen name "eel_nana" started a chat with "kaplma_girl," in which it was represented that "kaplma_girl" was a fourteen-year-old girl. It was later confirmed that "eel_nana" was the screen name of Rangie B. Alangcas, a male adult. In subsequent online chats, Alangcas expressed his interest in meeting Heather Cabico for the purpose of having sex. Although Alangcas was informed that Heather Cabico was fourteen-years-old, he still indicated that he would meet her "for having sex" even if she was "not experienced."

Alangcas traveled to a decoy meeting at a coffee shop at an agreed upon time on September 3, 2008. Alangcas was surveilled at the coffee shop by HPD officers, and he later confirmed in an online chat that it was he who showed up at the decoy meeting.

On March 3, 2009, Alangcas again related his desire to engage in sexual conduct with Heather Cabico, and a meeting was

---

[3] The facts are derived from a police report attached as "Exhibit A" to Rangie Alangcas' second motion to dismiss. The parties have accepted the police report as an accurate recitation of the events throughout the litigation.

set up for that day.  In an online message, Alangcas indicated that he would meet Heather Cabico and her fourteen-year-old friend, "Shanna," at a Pearl City fast-food restaurant before all going to Shanna's house.  Alangcas expressed that he would engage in various sexual acts with Heather, including sexual intercourse.

HPD officers watched Alangcas leave his house and travel to the fast-food restaurant, and Alangcas was arrested outside of the restaurant shortly after his arrival.  Alangcas subsequently admitted that he went to the restaurant on March 3, 2009, with the intent to engage in sexual conduct with the two girls.  Alangcas also admitted to sending pornographic web site information and a full-face picture of himself to the girls.

### B. Procedural Background

### 1. Trial Court Proceedings

Alangcas was indicted in counts I and III upon the charge of electronic enticement of a child in the first degree, in violation of HRS § 707-756,[4] and in counts II and IV upon the

---

[4] HRS § 707-756 (Supp. 2008) states,

(1) Any person who, using a computer or any other electronic device:

 (a)  Intentionally or knowingly communicates:

  (i)  With a minor known by the person to be under the age of eighteen years;

(continued. . .)

charge of attempted promotion of child pornography for minors, in violation of HRS § 705-500(1)(a) and HRS § 712-1215(1)(b)(i).[5] Alangcas filed two motions to dismiss Counts I and III of the indictment (collectively, "motions to dismiss"). The first motion argued that HRS § 707-756 violates the dormant commerce clause (first motion to dismiss), and the second motion argued that the statute is unconstitutionally overbroad and vague (second motion to dismiss).

---

(. . .continued)

      (ii)    With another person, in reckless disregard of the risk that the other person is under the age of eighteen years, and the other person is under the age of eighteen years; or

      (iii)   With another person who represents that person to be under the age of eighteen years;

  (b)   With the intent to promote or facilitate the commission of a felony:

      (i)    That is a murder in the first or second degree;

      (ii)   That is a class A felony; or

      (iii)  That is another covered offense as defined in section 846E-1,

agrees to meet with the minor, or with another person who represents that person to be a minor under the age of eighteen years; and

  (c)   Intentionally or knowingly travels to the agreed upon meeting place at the agreed upon meeting time,

is guilty of electronic enticement of a child in the first degree.

[5]    Counts II and IV are not at issue in this appeal.

On September 2, 2009, a hearing was held on Alangcas' motions to dismiss.[6] The court orally agreed with the State's opposing position and denied the motions to dismiss. The circuit court filed orders denying both motions on September 17, 2009.[7] The court granted Alangcas' motion for leave to file an interlocutory appeal, and the appeal was filed on October 12, 2009.

## 2. Proceedings before the ICA

### a. Arguments of the Parties

On appeal to the ICA, Alangcas argued that the circuit court erred in denying his motions to dismiss because HRS § 707-756 is unconstitutional as it is (i) overbroad, (ii) vague, and (iii) burdens interstate commerce.

### i.

In support of his contention that HRS § 707-756 is unconstitutionally overbroad because it criminalizes lawful conduct, Alangcas first evaluated the actus reus of HRS § 707-756. He argued that the actus reus is overbroad because it sweeps in lawful conduct, such as making innocent plans to meet a person under the age of eighteen. Next, Alangcas evaluated the mens rea of HRS § 707-756 and asserted that the criminal

---

[6] The Honorable Glenn J. Kim presided.

[7] The orders did not include findings and conclusions.

mens rea, "the intent to promote or facilitate the commission of a felony," only applies to one of the statute's three elements. Thus, he submitted that the mens rea "scheme" is overbroad as it does not narrow the offense sufficiently to exclude lawful conduct.

Alangcas maintained that the "purpose of the overbroad mens rea and actus rea" was to create a de facto attempt statute. He contended that HRS § 707-756 "is so overbroad that it can be committed solely in the mind without any criminal acts or outward manifestations of criminal intent."

In response, the State contended that HRS § 707-756 is not overbroad and only applies to criminal behavior. The State argued that Alangcas' analysis improperly considered the actus reus elements separately from the mens rea, and the State maintained that "a person who merely contacts a minor, agrees to meet the minor, and travels to the agreed upon meeting place cannot be prosecuted under the electronic enticement statute, unless the act is performed with the additional scienter—that is, to promote or facilitate a certain felony."

The State noted that HRS § 707-756 sets forth three distinct mens rea requirements to correspond with each element of the offense and only the second element requires the intent to promote or facilitate the commission of a felony. The State maintained that while all three mens rea requirements must be

met for criminal liability to attach, only criminal behavior is proscribed by HRS § 707-756 "because the statute requires all three paragraphs to be read together."[8]

The State disagreed with Alangcas' argument that HRS § 707-756 is a de facto attempt statute and asserted that the purpose of the statute was to criminalize predatory computer behavior rather than circumvent the attempt statute. The State maintained that in criminalizing predatory computer behavior, the statute "requires overt acts including electronic communication and traveling to an agreed meeting place" and cannot be committed solely by thoughts as Alangcas suggests.[9]

## ii.

Alangcas' also contended that HRS § 707-756 is void for vagueness because its referral to HRS § 846E-1 makes it unconstitutionally confusing. He pointed to the fact that "covered offenses" under HRS § 846E-1 include a criminal offense that is comparable or exceeds other defined offenses (Catch-all

---

[8] Alangcas pointed out that the State's position on appeal, that the criminal mens rea of the second element should apply to all three elements, was inconsistent with the State's position in the circuit court. Alangcas noted that the trial deputy argued that the criminal intent only applied to the second element.

[9] Alangcas maintained that irrespective of the legislative intent to criminalize predatory criminal behavior, the statute was overbroad and vague because "there is no actus reus of luring in § 707-756."

Clauses).[10]  Alangcas surmised that persons of reasonable

intelligence could differ on what crimes are comparable or

exceed others and that such subjectivity creates an

unconstitutional danger of discriminatory enforcement.  Alangcas

also suggested that HRS § 707-756 is vague because it includes

"undefined offenses and possibly offenses in other federal,

military and state jurisdictions" (the Conviction Clauses).[11]

---

[10]     The "Catch-all Clauses" refer to provisions within HRS § 846E-1 definitions of "Crimes against minors" section 4 and "Sexual offenses" section 6, which read:

> "Crime against minors" excludes "sexual offenses" as
> defined in this section and means a criminal offense that
> consists of:
>
> . . . .
> (4) A criminal offense that is comparable to or which
>     exceeds one of the offenses designated in paragraphs
>     (1) through (3); . . .
>
> . . . .
> "Sexual offense" means an offense that is:
>
> . . . .
> (6) A criminal offense that is comparable to or that
>     exceeds a sexual offense as defined in paragraphs (1)
>     through (5) . . . .

HRS § 846E-1 (Supp. 2009).

[11]     The "Conviction Clauses" refer to provisions within HRS § 846E-1 definitions of "Crimes against minors" section 5 and "Sexual offenses" section 7, which read:

> "Crime against minors" excludes "sexual offenses" as
> defined in this section and means a criminal offense that
> consists of:
>
> . . . .
> (5) Any federal, military, out-of-state, tribal, or foreign
>     conviction for any offense that, under the laws of this
>     State, would be a crime against minors as designated in
>     paragraphs (1) through (4).

(continued. . .)

Lastly, Alangcas argued that "the key action word, 'communicates' is left undefined" and that "[t]his vagueness invites delegation of basic policy matters to policemen . . . for resolution on an ad hoc and subjective basis."

The State responded that HRS § 707-756 is clear in its criminal prohibitions because it unambiguously defines the covered offenses of "crimes against minors" and "sexual offenses." The State argued that the Conviction Clauses are not vague or overbroad because they clearly refer to crimes that would be the equivalent of those listed in other jurisdictions. In response to Alangcas' argument that HRS § 707-756 subjects citizens to arbitrary police enforcement, the State maintained that the statute "clearly proscribes only conduct that is intended to harm minors."

### iii.

Alangcas contended in his third argument on appeal that HRS § 707-756 violates the "dormant commerce clause" because it regulates conduct wholly outside of Hawai'i, places a

---

(. . .continued)
"Sexual offense" means an offense that is:

. . . .
(7) Any federal, military, out-of-state, tribal, or foreign
    conviction for any offense that under the laws of this
    State would be a sexual offense as defined in
    paragraphs (1) through (6).

HRS § 846E-1.

burden on interstate commerce that outweighs the benefits the state received, and creates an inconsistent patchwork of regulations that has a chilling effect on interstate commerce over the internet. Alangcas asserted that "state attempts to regulate the flow of information over the internet will almost always be invalid."

In its response, the State countered that under its police power it may regulate internet conduct intended to endanger children's welfare. The State reasoned that HRS § 707-756 does not burden interstate commerce because it only applies if the conduct or the result of the offense occurs within the State of Hawai'i. The State maintained that the statute does not contribute to a patchwork of inconsistent regulations and that any burden imposed on interstate commerce is far outweighed by the State's interest in protecting children.

### b. ICA Opinion

On November 29, 2013, the ICA issued its published opinion. State v. Alangcas, 131 Hawai'i 312, 318 P.3d 602 (App. 2013). In determining whether a statute is overbroad, the ICA concluded it must "consider whether it reaches a substantial amount of constitutionally-protected conduct." Id. at 316, 318 P.3d at 606.

The ICA considered Alangcas' argument that HRS § 707-756 could be violated by a person who innocently uses an

electronic device to communicate with a person under eighteen, agrees to meet that person, and travels to the agreed meeting place at the agreed time, all without a criminal intent.  The ICA held that this argument "ignores the language in subsection (b) of the statute that requires that these otherwise 'innocent' acts be done with the intent to promote or facilitate the commission of certain, specified, felonies."[12]  Id. at 317, 318 P.3d at 607.  Thus, the ICA concluded that "[w]hen the statute is read as a whole, it is clear that only criminal conduct is proscribed."  Id.

In response to Alangcas' argument that HRS § 707-756 is overbroad because it requires criminal intent for only the second element, the ICA noted that "because the statute requires all three paragraphs of the statute to be read together, only behavior done with the requisite criminal intent is proscribed,

---

[12]      In this passage and others in its opinion, the ICA appears to interpret the felonious intent set forth in subsection (b) of the statute to apply to all of the conduct elements.  See also id. at 318, 318 P.3d at 608 ("[T]he statute plainly criminalizes conduct . . . that is coupled with the intent to promote or facilitate the commission of a felony.").

Yet, the ICA Opinion also seems to suggest a contrary interpretation—that the felonious intent of HRS § 707-756 only applies to the agreement element and not to the communication and traveling elements.  The ICA Opinion states that the offense "sufficiently identifies the mens rea for each of the acts which together constitute the criminal offense."  Id. at 317, 318 P.3d at 607; see also id. at 326, 318 P.3d 616 ("A plain reading of the statute makes clear that HRS § 707-756 only attaches culpability when a defendant intentionally or knowingly communicates with a minor, agrees to meet the minor with the intent to promote or facilitate a felony, and then intentionally or knowingly travels to the agreed upon place at the agreed upon time.").

*i.e.,* conduct that occurs with the intent to promote or facilitate the commission of a felony."[13]  Id.  The ICA concluded that "[s]uch a prohibition does not broadly sweep in innocent electronic communications with minors."  Id.

The ICA next addressed Alangcas' vagueness challenge. Id. at 320, 318 P.3d at 610.  The ICA held that the reference in HRS § 846E-1 to convictions in other jurisdictions was "merely redundant" and the "criminal prohibition is clear."  Id. at 321, 318 P.3d at 611.  The ICA determined that the reference in HRS § 846E-1 to "comparable" offences was not vague because a "person of ordinary intelligence can easily understand that a comparable offense is an equivalent one."  Id.  However, the ICA found that the word "exceeds," as used in the Catch-all Clauses of HRS § 846E-1, was unconstitutionally vague because the statute and its legislative history provided no guidance for determining whether an offense exceeded the enumerated ones. Id. at 325, 318 P.3d at 615.

Nonetheless, the ICA concluded that the statute was not unconstitutional as applied to Alangcas because "before a law may be held to be unduly vague, in violation of due process, it must be demonstrated that the law is impermissibly vague in all its applications."  Id.  The ICA held that Alangcas engaged

_____

[13]    See supra note 12.

in conduct that was clearly proscribed by the statute and that he could not "complain of the vagueness of the law as applied to the conduct of others."  Id.

In response to Alangcas' argument that the word "communicates" in the statute is undefined and fails to distinguish between "conduct that is calculated to harm and that which is essentially innocent," the ICA held that "when read in conjunction with the rest of the statute, the meaning [of 'communicates'] gains even greater clarity" and provides "much less leeway" to police in their enforcement of the statute and gave the "general public . . . a much better understanding of just what conduct is prohibited."  Id.  at 326, 318 P.3d at 616.

The ICA concluded that HRS § 707-756 "is not unconstitutionally overbroad and/or vague as applied to Alangcas, and the Circuit Court did not err in denying Alangcas' motion to dismiss the indictment on that basis."  Id.

Lastly, the ICA rejected Alangcas' argument that HRS § 707-756 violated the dormant commerce clause, concluding that it "does not concern interstate commerce, and, therefore, scrutiny under the Commerce Clause is not appropriate."  Id. at 328, 318 P.3d at 618.

On January 14, 2014, the ICA issued its judgment on appeal affirming the circuit court's orders.

### C. Application for Writ of Certiorari

In his Application for Writ of Certiorari

(Application), Alangcas presents two questions:

> 1. Whether the ICA gravely erred in only using an "as applied" analysis and holding that HRS § 707-756 is not unconstitutionally overbroad and/or vague and that the Circuit Court did not err in denying Mr. Alangcas' motion to dismiss the indictment on that basis.
>
> 2. Whether the ICA gravely erred in holding that HRS § 707-756 does not violate the dormant Commerce Clause of the United States Constitution and that the Circuit Court properly denied Mr. Alangcas' motion to dismiss the indictment on that ground.

Alangcas argues that the ICA applied the "wrong vagueness and overbreadth analysis" because the ICA used an "as applied" analysis instead of the "more stringent 'facial' analysis." Alangcas contends that HRS § 707-756 "does not limit its affect to words that are inherently criminal in nature or that in and of themselves constitute the crime." On the issue of overbreadth, Alangcas argues that since "the First Amendment is involved" in this case, he only has to show that HRS § 707-756 "is broad enough in its terms to suppress protected speech, without the need of showing that the specific conduct before the court is protected." Alangcas also maintains that the ICA's dormant commerce clause analysis was based on its erroneous application of an "as-applied" standard.

In its response, the State contends that the overbreadth doctrine does not apply because HRS § 707-756 "only regulates communication that is integral to a course of criminal

conduct[] and such speech receives no First Amendment (or overbreadth) protection."[14] The State argues that even if the speech involved in HRS § 707-756 were protected, the statute would still survive a facial challenge.

Concerning vagueness, the State maintains that "it is irrelevant whether the statute could be vague in other circumstances or as to others not before the court" because it is not vague as applied to Alangcas. The State also asserts that the ICA correctly determined the dormant commerce clause challenge.

## II. Standards of Review

When confronted with a constitutional challenge of a penal statute on the grounds of vagueness or overbreadth, the following principles apply:

> The constitutionality of a statute is a question of law which is reviewable under the right/wrong standard. Additionally, where it is alleged that the legislature has acted unconstitutionally, this court has consistently held that every enactment of the legislature is presumptively constitutional, and a party challenging the statute has the burden of showing unconstitutionality beyond a reasonable doubt. The infraction should be plain, clear, manifest, and unmistakable.

State v. Gaylord, 78 Hawai'i 127, 137, 890 P.2d 1167, 1177 (1995).

---

[14] The State agrees with Alangcas that the "most natural reading of the statute, based on its plain language and structure, is that the felonious intent only applies to the agreement element."

Where possible, a penal statute will be read in such a manner as to preserve its constitutionality.

> To accord a constitutional interpretation of a provision of broad or apparent unrestricted scope, courts will strive to focus the scope of the provision to a narrow and more restricted construction.
>
> Provisions of a penal statute will be accorded a limited and reasonable interpretation under this doctrine in order to preserve its overall purpose and to avoid absurd results.

Id. at 138, 890 P.2d at 1178 (quoting State v. Taylor, 49 Haw. 624, 634, 425 P.2d 1014, 1021 (1967)). "[A] statute will not be held unconstitutional by reason of uncertainty if any sensible construction embracing the legislative purpose may be given it." Id.

### III. Discussion

"In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct." State v. Beltran, 116 Hawai'i 146, 152, 172 P.3d 458, 464 (2007) (quoting Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494 (1982)). "If it does not, then the overbreadth challenge must fail." Hoffman, 455 U.S. at 494.

"In determining whether a substantial amount of protected activity was affected, a court should evaluate the ambiguous as well as the unambiguous scope of the enactment." Id. Thus in evaluating whether a statute is overbroad or vague,

the scope of the prohibited conduct requires determination. Id.; see also United States v. Williams, 553 U.S. 285, 293 (2008) ("The first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers.").

### A. Scope of Prohibited Conduct

The conduct prohibited by the offense of electronic enticement of a child in the first degree is stated as follows:

> (1) Any person who, using a computer or any other electronic device:
>
> (a) Intentionally or knowingly <u>communicates</u>:
>
> (i) With a minor known by the person to be under the age of eighteen years;
>
> (ii) With another person, in reckless disregard of the risk that the other person is under the age of eighteen years, and the other person is under the age of eighteen years; or
>
> (iii) With another person who represents that person to be under the age of eighteen years;
>
> (b) With the intent to promote or facilitate the commission of a felony:
>
> (i) That is a murder in the first or second degree;
>
> (ii) That is a class A felony; or
>
> (iii) That is another covered offense as defined in section 846E-1,
>
> <u>agrees to meet</u> with the minor, or with another person who represents that person to be a minor under the age of eighteen years; and
>
> (c) Intentionally or knowingly <u>travels</u> to the agreed upon meeting place at the agreed upon meeting time . . . .

HRS § 707-756(1) (emphases added). Therefore, HRS § 707-756 contains three distinct conduct elements: (1) communication with

a Minor[15] (communication element), (2) agreement to meet (agreement element), and (3) travel to the agreed place at the agreed time (travel element); (collectively, conduct elements). The scope of the applicability of the mens rea "intent to promote or facilitate the commission of a felony" (felonious intent) to the conduct elements has not been directly addressed by this court.

### 1. Plain Language

The fundamental starting point of statutory interpretation is the language of the statute itself. Hawaii Gov't Emps. Ass'n v. Lingle, 124 Hawai'i 197, 202, 239 P.3d 1, 6 (2010). Thus, where the statutory language is unambiguous, our duty is to give effect to its plain and obvious meaning. Id.

The plain language and structure of HRS § 707-756 indicate that the felonious intent does not apply to all of the conduct elements of HRS § 707-756. HRS § 707-756 includes three distinct elements with separate mens rea requirements: (a) intentionally or knowingly communicating with a Minor; (b) agreeing to meet the Minor with the intent to promote or facilitate the commission of a felony; and (c) intentionally or

---

[15] For convenience of discussion the term "Minor" includes all three categories encompassed by HRS § 707-756(1)(a): (1) a person known by the actor to be under the age of eighteen years, (2) a person who represents to the actor that the person is under the age of eighteen years, or (3) a person under the age of eighteen years where the actor communicates with the person in reckless disregard of the risk the person is underage.

knowingly traveling to the agreed meeting place at the agreed time.  Thus, for each element, there is a specific mental state that corresponds to the required physical act.

The three elements are listed in discrete subsections: (1)(a), (1)(b), and (1)(c).  Both the communication element of subsection (1)(a) and the traveling element of subsection (1)(c) must be "intentionally or knowingly" committed.  HRS § 707-756(1)(a), (c).  Only the second element of agreeing to meet the Minor in subsection (1)(b) must be made with "the intent to promote or facilitate the commission of a felony."  HRS § 707-756(1)(b).  There is nothing to indicate that the mens rea of the agreement element found in subsection (1)(b) was meant to apply to the communication and traveling elements found in subsections (1)(a) and (1)(c), respectively; such an interpretation of the statute is contrary to the plain and unambiguous meaning of the statute.

Our reading of HRS § 707-756 is consistent with this court's application of the statute in State v. McKnight, 131 Hawai'i 379, 319 P.3d 298 (2013).  In that case, the majority and the dissent, while not specifically analyzing the application of the felonious intent to the conduct elements, separated the felonious intent from the communication and traveling elements when discussing the statute.  Id. at 389, 319 P.3d at 308 (finding "it apparent that each of these elements serv[es] a

distinct purpose"); see also id. at 400, 319 P.3d at 319

(Recktenwald, C.J., dissenting) (noting that "the statute

requires the State to prove that the defendant did three things"

and listing each element separately).

## 2. Legislative History

The legislative history of a statute remains relevant

"even when the language appears clear upon perfunctory review."

Richardson v. City & Cnty. of Honolulu, 76 Hawai'i 46, 68-69, 868

P.2d 1193, 1215-16 (1994). "Were this not the case, a court may

be unable to adequately discern the underlying policy which the

legislature seeks to promulgate and, thus, would be unable to

determine if a literal construction would produce an absurd or

unjust result, inconsistent with the policies of the statute."

Id. (quoting Survivors of Medeiros v. Maui Land & Pineapple Co.,

66 Haw. 290, 297, 660 P.2d 1316, 1321 (1983)).

The legislative history of HRS § 707-756 also supports

an interpretation that the felonious intent applies only to the

agreement element. When HRS § 707-756 was first enacted in

2002, 2002 Haw. Sess. Laws. Act 200, § 1 at 841-42, the House

Standing Committee on the Judiciary & Hawaiian Affairs reported

that the purpose of the House Bill that eventually became HRS §

707-756 was "to deter crimes against minors by . . .

prohibit[ing] the use of a computer or other electronic device

to lure a minor to a meeting with intent to commit a felony."

H. Stand. Comm. Rep. No. 417, in 2002 House Journal, at 1399 (emphasis added). The Senate Standing Committee on Health and Human Services reported:

> Your Committee finds that the use of the Internet to entice children into meetings has become widespread. Current laws do not specifically address using computers to communicate with minors for purposes of committing crime. This measure would close that loophole, and would allow sex offenders to be investigated and prosecuted before they commit a kidnapping or other crime.

S. Stand. Comm. Rep. No. 2867, in 2002 Senate Journal, at 1384 (emphasis added); see also S. Stand. Comm. Rep. No. 3131, in 2002 Senate Journal, at 1498 (using the same language).

Interpreting the felonious intent so that it also applies to the travel element would appear inconsistent with the underlying policy of the statute, which is to protect children. H. Stand. Comm. No. 417, in 2002 House Journal, at 1399 ("The purpose of the bill is to deter crimes against minors."). A person who arranges a meeting with a Minor with a felonious intent and then travels to that meeting presents an immediate physical danger to the Minor. See McKnight, 131 Hawai'i at 389, 319 P.3d at 308 ("[R]equiring that the defendant travel to an agreed-upon meeting place at an agreed-upon meeting time ensures that an individual is prosecuted only in situations where his behavior poses an actual physical threat to the child."). A statute that absolves a person from liability based upon the abandonment of felonious intent en route to the meeting would

not protect children in conformance with the purpose of the legislation.[16]

### 3. Pari Materia

"Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other.  What is clear in one statute may be called upon in aid to explain what is doubtful in another."  State v. Kaman'o, 118 Hawai'i 210, 218, 188 P.3d 724, 732 (2008); see also HRS § 1-16 (1993).

The offense of electronic enticement of a child in the second degree, HRS § 707-757 (Supp. 2013), which concerns the same subject matter as the first degree offense, HRS § 707-756, is defined as:

> (1)   Any person who, using a computer or any other electronic device:
>
> (a)   Intentionally or knowingly communicates:
>
> (i)    With a minor known by the person to be under the age of eighteen years;
>
> (ii)   With another person, in reckless disregard of the risk that the other person is under the age of eighteen years, and the other person is under the age of eighteen years; or
>
> (iii)  With another person who represents that person to be under the age of eighteen years; and
>
> (b)   With the intent to promote or facilitate the commission of a felony, agrees to meet with the minor, or with another person who represents that person to be a minor under the age of eighteen years; and

---

[16]     If the felonious intent also applied to the travel element, then its abandonment during the travel element would not permit the offense to be charged, even if that actor again changed his or her mind upon meeting the Minor.

>           (c)   Intentionally or knowingly travels to the
>                 agreed upon meeting place at the agreed upon
>                 meeting time . . . .

HRS § 707-757 (emphasis added).  HRS § 707-757 directly links

the felonious intent with the agreement element.  Because HRS §§

707-756 and 707-757 are manifestly in pari materia, the clarity

with which HRS § 707-757 connects the felonious intent to the

agreement element buttresses the conclusion that the intent of

the legislature was to assign the felonious intent to the

agreement element only.

Therefore, in light of the plain language of HRS §

707-756, its legislative history, and the doctrine of in pari

materia, we conclude that the "intent to promote or facilitate

the commission of a felony" set forth in the agreement element

applies to that element only.

## B. Overbreadth

Overbreadth analysis addresses laws that, if enforced,

would allow the prosecution of constitutionally-protected

conduct.  Andrew E. Goldsmith, The Void-for-Vagueness Doctrine

in the Supreme Court, Revisited, 30 Am. J. Crim. L. 279, 284

n.39 (2003).  Overbreadth doctrine assumes that individuals

understand what a statute prohibits and as a consequence,

refrain from that behavior, even though some of it is protected.

Id.

Generally, "one who alleges that a statute is unconstitutionally overbroad . . . must be directly affected by the claimed overbroad aspects." Gaylord, 78 Hawai'i at 142, 890 P.2d at 1182 (quoting State v. Tripp, 71 Haw. 479, 483, 795 P.2d 280, 282 (1990)). That is, the doctrine is generally limited to challengers who allege that their innocent conduct has been improperly swept into the reach of the statute. Id.

Alangcas admitted his intent to engage in sexual conduct with a Minor; thus, Alangcas cannot and does not assert that constitutionally protected conduct is being prosecuted by the State. Therefore, the law is not overbroad as applied to his conduct, and Alangcas does not have standing to challenge the law as overbroad on that basis.

However, a law may be challenged as overbroad under two additional circumstances. A statute may be challenged as overbroad if it affects freedom of expression that is constitutionally protected. See Beltran, 116 Hawai'i at 150-51, 172 P.3d at 462-63. A court may also entertain a facial overbreadth challenge when "the enactment reaches a substantial amount of constitutionally protected conduct." Id. at 152, 172 P.3d at 464 (quoting Hoffman, 455 U.S. at 494.

**1. Constitutionally Protected Expression**

Alangcas contends that HRS § 707-756 affects the first amendment right to freedom of expression.

The First Amendment and article I, § 4 of the Hawai'i Constitution prohibit the enactment of any law that abridges freedom of speech.[17]  However, when the scienter requirement of a statute sufficiently limits criminal culpability to reach only conduct outside the protection of the First Amendment, legitimate speech is not endangered.  United States v. Dhingra, 371 F.3d 557, 561 (9th Cir. 2004).  Thus, criminal sexual conduct, such as when the prosecution can prove that "one of the parties . . . intended to target a minor for criminal sexual activity," "does not enjoy First Amendment protection."  United States v. Meek, 366 F.3d 705, 722 (9th Cir. 2004).

In Dhingra and Meek, the Ninth Circuit Court of Appeals reviewed 18 USC § 2422(b),[18] a federal anti-enticement

---

[17]     The U.S. Constitution provides that

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. Const. amend. I.  The Hawai'i Constitution provides as follows:

> No law shall be enacted respecting an establishment of religion, or prohibiting the free exercise thereof, or abridging the freedom of speech or of the press or the right of the people peaceably to assemble and to petition the government for a redress of grievances.

Haw. Const. art. I, § 4.

[18]     The federal law provides,

> Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States
(continued. . .)

- 26 -

provision similar to HRS § 707-756.  The Ninth Circuit held that "no . . . legitimate speech [is] jeopardized by § 2422 because the statute only criminalizes conduct, i.e. the targeted inducement of minors for illegal sexual activity."  Meek, 366 F.3d at 721; see also Dhingra, 371 F.3d at 561.  The court noted that speech is not protected when it is "merely the vehicle through which a pedophile ensnares the victim."  Meek, 366 F.3d at 721 (citing United States v. Rowlee, 899 F.2d 1275, 1278 (2d Cir. 1990)).  "Because persuading [a minor] to engage in . . . sexual acts for which a person could be charged with a criminal offense comes closer to incitement than it does to general advocacy, the statute does not run afoul of the First Amendment."  Id. (internal quotation marks omitted).  Thus, "inducement of minors to engage in illegal sexual activity enjoys no First Amendment protection."[19]  Id.

_____

(. . .continued)
knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

18 U.S.C. § 2422(b) (2006).

[19]    See also United States v. Gagliardi, 506 F.3d 140, 148 (2d Cir. 2007) ("[T]he statute punishes the act of enticing or attempting to entice a minor when it is knowingly done; it does not implicate speech."); United States v. Tykarsky, 446 F.3d 458, 473 (3d Cir. 2006) ("There is no First Amendment right to persuade minors to engage in illegal sex acts."); United States v. Thomas, 410 F.3d 1235, 1244 (10th Cir. 2005) ("[T]he Defendant simply does not have a First Amendment right to attempt to persuade minors to engage in illegal sexual acts."); United States v. Hornaday, 392 F.3d 1306,
(continued. . .)

Meek also noted, "The potential for unconstitutional chilling of legitimate speech disappears because § 2422(b) requires the prosecution to prove that a defendant actually knows or believes that the specific target of the inducement is a minor." Id. at 722. The statute required "the defendant to know or believe that the person whom he seeks to induce into sexual activity is a minor, § 2422(b) does not infringe on legitimate speech between adults." Id.; see also United States v. Bailey, 228 F.3d 637, 639 (6th Cir. 2000) (holding that § 2422(b) "only affects those who intend to target minors").

State courts have come to the same conclusion that comparable electronic enticement statutes do not implicate freedom of expression because the laws only criminalize speech that is intended to entice a minor to engage in prohibited sexual conduct.[20]

---

(. . .continued)
1311 (11th Cir. 2004) ("Speech attempting to arrange the sexual abuse of children is no more constitutionally protected than speech attempting to arrange any other type of crime."); United States v. Hite, 896 F. Supp. 2d 17, 22 (D.D.C. 2012) ("Section 2422(b) does not criminalize protected speech as a means to prohibit certain conduct, it directly prohibits certain conduct.").

[20] See, e.g., Moore v. State, 298 P.3d 209, 215 (Alaska Ct. App. 2013) ("In the present case, the online enticement statute is primarily focused on speech that is intended to induce a minor to engage in otherwise prohibited sexual activities."); People v. Hsu, 99 Cal. Rptr. 2d 184, 194 (Ct. App. 2000) (upholding a prohibition of enticement of minors, and stating, "The only chilling effect of the statute is on the conduct of those who would use otherwise protected speech to seduce minors."); Lopez v. State, 757 S.E.2d 436, 441 (Ga. 2014), cert. denied (Sept. 22, 2014) (holding that a communication for the purpose of seducing or enticing a child so that the defendant can commit an act of child molestation is not unconstitutional); State v. Blankenship, 415 S.W.3d 116, 121 (Mo. 2013) (holding that
(continued. . .)

In this case, HRS § 707-756 requires proof of three conduct elements: (1) a communication with the Minor through the use of a computer or other electronic device, (2) an agreement to meet the Minor, and (3) traveling to the agreed place at the agreed time.  Additionally, HRS § 707-756 contains a clear scienter requirement; in order to commit the offense, the agreement to meet must be made with the "intent to promote or facilitate the commission of a felony."  HRS § 707-756(1)(b). The "felonious intent ensures that the defendant has a culpable state of mind at the time [the defendant] entices the child into meeting; and requiring that the defendant travel to an agreed-upon meeting place at an agreed-upon meeting time ensures that an individual is prosecuted only in situations where [the defendant's] behavior poses an actual physical threat to the child."  McKnight, 131 Hawai'i at 389, 319 P.3d at 308.

Thus, HRS § 707-756 solely affects conduct in which a person has a felonious intent at the time a meeting is arranged with the Minor and thereafter the person travels to the meeting

---

(. . .continued)
defendant's speech was an integral part of his attempt to induce a child for the purpose of engaging in a sexual performance and was not constitutionally protected); State v. Rung, 774 N.W.2d 621, 630 (Neb. 2009) (holding that the state law "targets only speech used for the purpose of enticing a child to engage in illegal sexual conduct, and . . . such speech is not protected by the First Amendment"); Arganbright v. State, 328 P.3d 1212, 1220-21 (Okla. 2014) (upholding a prohibition on communications with minors that are likely to result in sexual exploitation or sexual abuse as a permissible restriction on speech).

place at the agreed upon meeting time.  The statute only criminalizes <u>speech</u> when it is employed to arrange a meeting with a Minor with the intent to promote or facilitate commission of a felony.  Since HRS § 707-756 does not implicate the freedoms of expression guaranteed under the First Amendment or article I, § 4 of the Hawai'i Constitution, Alangcas' overbreadth challenge on that basis fails.

## 2. Facial Challenge

"[I]n a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct."  <u>Beltran</u>, 116 Hawai'i at 152, 172 P.3d at 464; <u>see also</u> <u>United States v. Stevens</u>, 559 U.S. 460, 473 (2010) (holding that a law may be invalidated as overbroad if "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep").[21]

Alangcas claims that HRS § 707-756 would criminalize "a substantial amount of constitutionally protected conduct"; "a

---

[21]     In <u>State v. Beltran</u>, the ordinance at issue was one that banned camping.  Camping was defined as the use of a public park for living accommodations, including making preparations to sleep or storing personal belongings.  Such activities constituted camping "regardless of the intent of the participants or the nature of any other activities in which they may also be engaging."  <u>Beltran</u>, 116 Hawai'i 146, 149, 172 P.3d 458, 461 (2007).  The <u>Beltran</u> court held that, by sweeping "any other activities" "regardless of the intent of the participants" into its ambit, the ordinance cast a "limitless net" that "seemingly reach[ed] a substantial amount of constitutionally protected conduct."  <u>Id.</u> at 152, 172 P.3d at 464.

sports coach, a music instructor, or just about anyone who works with or has children could be found guilty of violating [HRS § 707-756] even though the only communication he or she ever had with the minor on a computer or electronic device was completely innocent."

As noted, HRS § 707-756 requires three conduct elements: (1) communication with the Minor via a computer or other electronic device; (2) an agreement to meet the Minor, made with the intent to promote or facilitate the commission of a felony; and (3) traveling to the agreed place at the agreed time.  HRS § 707-756 solely affects conduct in which a person has a felonious intent at the time a meeting is arranged with the Minor and thereafter travels to the meeting place at the agreed meeting time.  Innocently communicating with Minors via electronic devices and then meeting with those Minors is not prohibited by HRS § 707-756; thus, a substantial amount of constitutionally protected conduct is not implicated.

A person's freedom of movement has also been found to be a basis for challenging a statute under the overbreadth doctrine.  See Kolender v. Lawson, 461 U.S. 352, 358 (1983) (citing Aptheker v. Secretary of State, 378 U.S. 500, 505-06 (1964); Kent v. Dulles, 357 U.S. 116, 126 (1958)).  To the extent Alangcas raised the freedom of movement in his Application, any restriction on a person's legitimate movements,

assuming complete abandonment of the felonious intent en route to the meeting place, would not sweep a substantial amount of constitutional conduct into HRS § 707-756's ambit. The person's freedom to travel would be limited only by the exclusion of that agreed upon location and only at that agreed time.

Thus, HRS § 707-756 is not overbroad because it does not reach a substantial amount of constitutionally protected conduct.

### C. Vagueness

#### 1. Analyzing a Vagueness Challenge

A penal statute is vague if it does not define a criminal offense "with sufficient definiteness [so] that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Beltran, 116 Hawai'i at 151, 172 P.3d at 463. Thus, a statute is void for vagueness under article I, § 5 of the Hawai'i Constitution[22] if (1) it is internally inconsistent and incomprehensible to a person of ordinary intelligence, or (2) it invites delegation of basic policy matters to police for

---

[22] Article I, § 5 of the Hawai'i Constitution states as follows:

No person shall be deprived of life, liberty or property without due process of law, nor be denied the equal protection of the laws, nor be denied the enjoyment of the person's civil rights or be discriminated against in the exercise thereof because of race, religion, sex or ancestry.

resolution on an ad hoc and subjective basis.  Id. at 153, 172 P.3d at 465.

The United States Supreme Court "has often noted that criminal statutes are subject to stricter vagueness analysis than civil statutes."  Goldsmith, supra, at 281  (citing Hoffman, 455 U.S. at 498-99; Nat'l Endowment for the Arts v. Finley, 524 U.S. 569, 588 (1998)) (referring to the criteria for issuing NEA grants and noting, "The terms of the provision are undeniably opaque, and if they appeared in a criminal statute or regulatory scheme, they could raise substantial vagueness concerns.").  "Subject to an even stricter standard are criminal statutes that reach expression protected by the First Amendment, any other constitutional right, or any 'fundamental right.'" Id. (citing Smith v. Goguen, 415 U.S. 566, 573 (1974); Hoffman, 455 U.S. at 499; Rose v. Locke, 423 U.S. 48, 50 n.3 (1975) (per curiam)).[23]

Thus, as a criminal statute, HRS § 707-756 is subject to a "stricter vagueness analysis" than a civil statute. However, the standard for demonstrating that a statute is contrary to our constitution remains high: "Every enactment of

---

[23]    Four justices also have suggested that statutes creating new crimes also require special precision.  Andrew E. Goldsmith, The Void-for-Vagueness Doctrine in the Supreme Court, Revisited, 30 Am. J. Crim. L. 279, 281 & n.19 (2003) (citing United States v. Harriss, 347 U.S. 612, 634 (1954) (Jackson, J., dissenting); United States v. Petrillo, 332 U.S. 1, 16-17 (1947) (Reed, J., dissenting, joined by Murphy and Rutledge, JJ.)).

the Hawai'i Legislature is presumptively constitutional, and the party challenging a statute has the burden of showing the alleged unconstitutionality beyond a reasonable doubt."  State v. Bui, 104 Hawai'i 462, 466, 92 P.3d 471, 475 (2004).

This court has recognized that a statute may be found void for vagueness on its face or as applied.  See State v. Bates, 84 Hawai'i 211, 222, 933 P.2d 48, 59 (1997) (observing that where a case does not involve any first amendment issues, a "defendant has standing to raise a vagueness challenge only insofar as the statute is vague as applied to his or her specific conduct");  State v. Manzo, 58 Haw. 440, 573 P.2d 945, 955 (1977) ("A statute may be overbroad because its vagueness extends its reach too far, and yet it may define the core of its coverage with sufficient specificity to avoid challenge for facial vagueness.").

In order for a defendant to succeed on an as-applied challenge, the defendant must demonstrate that the disputed statute is vague with respect to his or her conduct.  Id. However, when a statute burdens a significant constitutional right, such as the freedom of expression, a defendant whose rights are not violated may raise the constitutional rights of others.  See Beltran, 116 Hawai'i at 151 n.4, 172 P.3d at 463 n.4.

In Beltran, this court held that a camping regulation was facially overbroad and vague. Id. at 151, 155, 172 P.3d at 463, 467. The camping regulation was found to "conceivably" implicate activities "relating to freedom of movement and association, or that involve expressive conduct." Id. at 152, 172 P.3d at 464. In finding the statute facially overbroad and vague, the Beltran court relied on Kolender v. Lawson, 461 U.S. 352, 353 (1983).

Kolender "concerned a facial vagueness challenge to a criminal statute that require[d] persons who loiter or wander on the streets to provide a 'credible and reliable' identification and to account for their presence when requested by a peace officer." Kolender, 461 U.S. at 353. The Kolender court based its application of facial analysis on concerns for First Amendment liberties and the right to freedom of movement. Id. at 358; see also Beltran, 116 Haw. at 151, 172 P.3d at 463. The Kolender court observed that a facial challenge of a law is permitted where the law "reaches a substantial amount of constitutionally protected conduct." 461 U.S. at 358 n.8. Kolender also concluded that that "where a statute imposes criminal penalties, the standard of certainty is higher." Id.

The Kolender court expressly rejected the idea that a statute "should not be held unconstitutionally vague on its face unless it is vague in all of its possible applications." Id.;

see also Beltran, 116 Hawai'i at 155, 172 P.3d at 467 ("Kolender,
however, indicated that '[t]his concern has, at times, led us to
invalidate a criminal statute on its face even when it could
conceivably have had some valid application.'" (alteration in
original) (quoting Kolender, 461 U.S. at 358 n.8)).  Therefore,
under Beltran's adoption of Kolender, because a criminal statute
requires higher certainty, it may "at times" be challenged for
vagueness on its face "even when it could conceivably have had
some valid application," just as a facial challenge is permitted
for overbreadth if the statute reaches a substantial amount of
protected conduct.[24]  Beltran, 116 Hawai'i at 151, 172 P.3d at
463.

Thus, in analyzing vagueness challenges, this court
first considers the meaning and specificity of the statute, and
if the statute is vague, then the court determines whether the
statute is vague as applied to the person's specific conduct or
implicates a significant constitutional protection, such as a
first amendment right.

---

[24]    Kolender buttresses this argument by noting

The dissent concedes that "the overbreadth doctrine permits
facial challenge of a law that reaches a substantial amount of
conduct protected by the First Amendment."  However, in the
dissent's view, one may not "confuse vagueness and overbreadth by
attacking the enactment as being vague as applied to conduct
other than his own."  But we have traditionally viewed vagueness
and overbreadth as logically related and similar doctrines.

Kolender, 461 U.S. at 358 n.8.

For example, in Bates, 84 Hawai'i at 222, 933 P.2d at 59, the court initially evaluated the challenged statute to determine whether a person of ordinary intelligence would know what conduct was prohibited. Bates, 84 Hawai'i at 222-226, 933 P.2d at 59-63. Bates began its analysis by examining the legislative history of the relevant statute and reviewing federal courts' interpretation of similar statutes in order to define the statutory terminology at issue. Id. at 222-224, 933 P.2d at 59-61. Having properly defined the statute, the Bates court concluded a person of ordinary intelligence would know what conduct was prohibited, and therefore the court found the law was not unconstitutionally vague. Id. at 224-225, 933 P.2d at 61-62. Having reached this determination, the Bates court was not required to address the defendant's standing in order to determine whether "the defendant [can] succeed on a vagueness challenge." Id. at 222, 933 P.2d at 59.

Similarly, in Bui, a defendant challenged his prosecution for possession of burglar's tools, arguing that "burglar's tools," as described in the statute, "could include anything used in the commission of a burglary."[25] Bui, 104

_____

[25] The statute stated that the subject offense was

knowing[ ] possess[ion of] any explosive, tool, instrument, or other article adapted, designed, or commonly used for committing or facilitating the commission of an offense involving forcible entry into premises or theft by a
(continued. . .)

Hawai'i at 463, 465; 92 P.3d at 472, 474. This court held that the statute was not vague because it described the proscribed conduct in ordinary and understandable terms and also adequately informed the public of how to avoid committing the offense. Id. at 465, 92 P.3d at 474. Thus, as in Bates, the court initially determined that the challenged statute was not vague, and as a consequence of its determination, the court had no reason to address whether the statute was vague as applied to the defendant's conduct. Bui, 104 Hawai'i at 465, 92 P.3d at 474.

In summary, in resolving a challenge to a criminal statute as vague, the challenged statute is analyzed to determine if it (1) is internally inconsistent and incomprehensible to a person of ordinary intelligence, or (2) invites delegation of basic policy matters to police for resolution on an ad hoc and subjective basis. Beltran, 116 Hawai'i at 153, 172 P.3d at 465. If the statute is determined to be vague, the challenger is then required to demonstrate that "the statute is vague as applied to his or her specific conduct"

---

(. . .continued)
physical taking and the person intends to use the explosive, tool, instrument, or article, or knows some person intends ultimately to use it, in the commission of the offense of the nature described aforesaid . . . .

Bui, 104 Haw. at 465, 92 P.3d at 474 (emphasis and alterations in original) (quoting HRS § 708-812(1)(a) (1993)).

or demonstrate that the statute burdens a significant constitutional right such as a first amendment right.[26]

We have already determined that HRS § 707-756 does not burden freedom of expression under the First Amendment or Article I, § 4 of the Hawai'i Constitution or the freedom of movement.  Alangcas has not alleged other significant constitutional rights that are burdened by the asserted vagueness of HRS § 707-756.  Thus, we look first to determine whether HRS § 707-756 is unconstitutionally vague, and if so, whether it is vague as applied to Alangcas' conduct.

### 2. Application of Vagueness Analysis

HRS § 707-756(1) provides that the agreement to meet with the Minor at a certain place and at a certain time may occur with the intent to promote or facilitate murder, a class A felony, or, alternatively, "[w]ith intent to promote or facilitate the commission of a felony . . . that is another covered offense as defined in HRS § 846E-1."  HRS § 707-756(1) (emphasis added).  HRS § 846E-1 is the definition section of the State's sex offender registration Chapter.  Id.  HRS § 846E-1 defines two types of "covered offenses"; a "covered offense"

---

[26]     Thus, the statement of the ICA that "before a law may be held to be unduly vague, . . . it must be demonstrated that the law is impermissibly vague in all its applications," Alangcas, 131 Hawai'i at 325, 318 P.3d at 615, is contrary to our prior decision in Beltran. 116 Hawai'i at 154-55, 172 P.3d at 466-67 (permitting a vagueness challenge to "invalidate a criminal statute on its face even when it could conceivably have had some valid application").

means a criminal offense that is either (1) a "crime[] against [a] minor[]" or (2) a "sexual offense."  HRS § 846E-1 (Supp. 2009).  For each covered offense, the statute lists crimes that are included in the definition, and each definition also includes a Catch-all Clause providing that the definition includes any criminal offense that "is comparable to or that exceeds" one of the listed offenses.[27]  Beltran, 116 Hawai'i at 152, 172 P.3d at 464.

---

[27]     A "crime[] against [a] minor" includes

(1)   Kidnapping of a minor, by someone other than a parent;

(2)   Unlawful imprisonment in the first or second degree that involves the unlawful imprisonment of a minor by someone other than a parent;

(3)   An act, as described in chapter 705, that is an attempt, criminal solicitation, or criminal conspiracy to commit one of the offenses designated in paragraph (1) or (2);

(4)   A criminal offense that is comparable to or which exceeds one of the offenses designated in paragraphs (1) through (3); or

(5)   Any federal, military, out-of-state, tribal, or foreign conviction for any offense that, under the laws of this State, would be a crime against minors as designated in paragraphs (1) through (4).

HRS § 846E-1 (emphases added).  Similarly, a "sexual offense" is defined as an offense that is,

(1)   Set forth in section 707-730(1), 707-731(1), 707-732(1), 707-733(1)(a), 707-733.6, 712-1202(1), or 712-1203(1), but excludes conduct that is criminal only because of the age of the victim, as provided in section 707-730(1)(b), or section 707-732(1)(b) if the perpetrator is under the age of eighteen;

(continued. . .)

A Conviction Clause is also included in each

definition; under the Conviction Clauses, any previous

---

(. . .continued)

(2)    An act defined in section 707-720 if the charging document for the offense for which there has been a conviction alleged intent to subject the victim to a sexual offense;

(3)    An act that consists of:

(A)    Criminal sexual conduct toward a minor, including but not limited to an offense set forth in section 707-759;

(B)    Solicitation of a minor who is less than fourteen years old to engage in sexual conduct;

(C)    Use of a minor in a sexual performance;

(D)    Production, distribution, or possession of child pornography chargeable as a felony under section 707-750, 707-751, or 707-752;

(E)    Electronic enticement of a child chargeable under section 707-756 or 707-757 if the offense was committed with the intent to promote or facilitate the commission of another covered offense as defined in this section; or

(F)    Solicitation of a minor for prostitution in violation of section 712-1209.1;

(4)    A violation of privacy under section 711-1110.9;

(5)    An act, as described in chapter 705, that is an attempt, criminal solicitation, or criminal conspiracy to commit one of the offenses designated in paragraphs (1) through (4);

(6)    A criminal offense that is comparable to or that exceeds a sexual offense as defined in paragraphs (1) through (5); or

(7)    Any federal, military, out-of-state, tribal, or foreign conviction for any offense that under the laws of this State would be a sexual offense as defined in paragraphs (1) through (6).

Id. (emphases added).

conviction from another jurisdiction that would be a "crime against [a] minor" or a "sexual offense" under Hawai'i law is also included in the definition for each covered offense.  Thus, both types of covered offenses appear to be broadened by the Catch-all Clauses and the Conviction Clauses.

Alangcas argues that HRS § 707-756 is unconstitutionally vague due to its incorporation of the definition of "covered offenses" from HRS § 846E-1.  Alangcas contends the Conviction Clauses and the Catch-all Clauses introduce unconstitutional vagueness into HRS § 707-756 because "[p]ersons of ordinary intelligence are left to guess and no doubt differ in opinion as to what offenses are 'comparable to' or 'exceed' the offenses mentioned in the statute."  "Such guesswork," Alangcas concludes, "not only among citizens, but among police officers, creates a danger of discriminatory enforcement on an ad hoc and subjective basis."  Additionally, as a separate vagueness challenge, Alangcas contends that because the word "communicate" is undefined, HRS § 707-756 is constitutionally flawed.

### a. Catch-all Clauses

To reiterate, under Beltran, a penal statute is void for vagueness unless the criminal offense is defined "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage

arbitrary and discriminatory enforcement."  Beltran, 116 Hawai'i at 151, 172 P.3d at 463.  Thus, a challenged statute is examined as to whether it is internally inconsistent and incomprehensible to a person of ordinary intelligence or invites delegation of basic policy matters to police for resolution on an ad hoc and subjective basis.  Id. at 153, 172 P.3d at 465.

A statute that is internally inconsistent may prevent a person of ordinary intelligence from knowing what conduct is prohibited.[28]  Id. at 151, 172 P.3d at 463.  However, HRS § 707-756(1) is not internally inconsistent.  There is nothing about the reference in HRS § 707-756(1)(b)(iii) to the covered offenses in HRS § 846E-1 that contradicts any other part of the prohibition of electronic enticement in HRS § 707-756.

A statute is not incomprehensible if "a person of ordinary intelligence would be able to ascertain the nature of conduct prohibited."  Bui, 104 Hawai'i at 465, 92 P.3d at 474.  The ICA in this case held that the "exceeds" language in the Catch-all Clauses introduced unconstitutional vagueness into HRS § 707-756, Alangcas, 131 Hawai'i at 325, 318 P.3d at 615, but

---

[28]    One standard for an internally inconsistent statute was highlighted in Beltran: a law is inconsistent if it instructs that a violation occurs where "it reasonably appears, in light of the circumstances, that the participants in conducting these activities, are in fact using the area as a living accommodation regardless of the intent of the participants or the nature of any activities in which they may also be engaging,'" because of the conflict between "reasonably appears" and "in fact."  Beltran, 116 Hawai'i at 153, 172 P.3d at 465.

that the "comparable" language in the Catch-all Clauses did not suffer the same deficiency.  Id. at 321-22, 325, 318 P.3d at 611-612, 615.

HRS § 707-756(1)(b) requires that the actor intend to promote or facilitate a "felony."  Thus, the qualifying "covered offense" set forth in HRS § 846E-1 must be a felony.  HRS § 707-756(1)(b).  That is, whatever covered offense may be alleged as part of the mens rea to the agreement element of an electronic enticement prosecution, including an offense that is "comparable to" or that "exceeds" a crime against a Minor or a sexual offense, the intended conduct must be classified as a felony by the Hawai'i legislature.[29]

A person of ordinary intelligence would know that intending to promote or facilitate a felony, as defined by

_____

[29]    HRS § 701-107 provides the following regarding grades and classes of offenses:

> (1)    An offense defined by this Code or by any other statute of this State for which a sentence of imprisonment is authorized constitutes a crime.  Crimes are of three grades: felonies, misdemeanors, and petty misdemeanors.  Felonies include murder in first and second degrees, attempted murder in the first and second degrees, and the following three classes: class A, class B, and class C.
>
> (2)    A crime is a felony if it is so designated in this Code or if persons convicted thereof may be sentenced to imprisonment for a term which is in excess of one year.

HRS § 701-107 (1993) (emphases added).  Consequently, a crime is a "felony" if it is so designated by the Hawai'i penal code or if another statute of this State authorizes a sentence of "imprisonment for a term which is in excess of one year."  HRS § 701-107(2).

Hawai'i law, against a Minor is prohibited.  Future cases may reveal a dispute as to whether a given felony is actually "comparable to" or actually "exceeds" the listed offenses included within the covered offenses, such that a question is present as to whether the intent to promote or facilitate the felony was properly included as a mens rea in a prosecution under HRS § 707-756.  However, such a hypothetical dispute is irrelevant to a vagueness challenge to HRS § 707-756 because there is no question that a person of ordinary intelligence would have a reasonable opportunity to know that, as a felony, the intended conduct upon a Minor was indeed prohibited.  To put it another way, when the intended conduct in question is indisputably proscribed by Hawai'i law as a felony, a person cannot complain in a vagueness challenge that the person is rendered unsure as to whether the intent to promote or facilitate that conduct upon a Minor is against the law.  Thus, the reference to HRS § 846E-1 does not render HRS § 707-756 incomprehensible to a person of ordinary intelligence.  Bui, 104 Hawai'i at 465, 92 P.3d at 474 ("Consequently, we conclude a person of ordinary intelligence would be able to ascertain the nature of conduct prohibited.").

The same analysis eliminates the concern of "a delegation of basic policy matters to police resolution on an ad hoc and subjective basis," Beltran, 116 Hawai'i at 153, 172 P.3d

at 465, because if the intended conduct is already prohibited as a felony, there is no concern of arbitrary or subjective police enforcement.  That is, so long as the intended conduct designated as a felony in Hawaii's statutory code is not defined so vaguely as to permit "arbitrary and discriminatory enforcement," Gaylord, 78 Hawai'i at 138, 890 P.2d at 1178, prosecuting the intent to promote or facilitate such conduct under the electronic enticement prohibition does not jeopardize consistent nondiscriminatory enforcement.

Thus, as the Catch-all Clauses are narrowed in application to HRS § 707-756 by the requirement that the intended conduct be a felony, they are neither incomprehensible to a person of ordinary intelligence, nor do they risk subjective or arbitrary enforcement by police.  Therefore, HRS § 707-756 is not unconstitutionally vague.[30]  As the statute is not vague, the question of whether the statute is vague as applied to Alangcas' conduct is inapplicable.

---

[30]     Had this court determined that the term "exceeds" introduced unconstitutional vagueness, as set forth supra in section II.C.1, into either HRS §§ 707-756 or 846E-1, it is noted that an offending portion of a statute may be severable such that the remaining portion of the law is constitutional.  "A part of a statute may be unconstitutional and at the same time the remainder may be upheld as constitutional."  Hawaiian Trust Co. v. Smith, 31 Haw. 196, 202 (Haw. Terr. 1929); see also Nelson v. Miwa, 56 Haw. 601, 611, 546 P.2d 1005, 1013 (1976) ("Where part of a statute is unconstitutional [but] is inseparable from the remainder, the whole statute is invalid.").

### b. Conviction Clauses

The effect of the Conviction Clauses is to require registration by sex offenders and other covered offenders under HRS Chapter 846E for particular convictions from other jurisdictions; that is, completed conduct in another jurisdiction. HRS §§ 846E-1, 846E-2. In contrast, HRS § 707-756 prohibits conduct committed with the intent to facilitate or promote a felony; i.e. relating to uncompleted or future conduct. The scope of HRS § 707-756 is not broadened by the reference in HRS § 846E-1 to convictions in other jurisdictions because it is of no meaning to say that a person has the "intent to promote or facilitate" completed conduct; one cannot have the legal intent to do what one has already done. Thus, with regard to the Conviction Clauses, the ICA correctly determined that HRS § 707-756 does not incorporate convictions from other jurisdictions, and therefore the statute is not unconstitutionally vague on that basis.[31] Alangcas, 131 Hawai'i at 321, 318 P.3d at 611.

---

[31] However, the incorporation of the Conviction Clauses into HRS § 707-756 through HRS § 846E-1 is not "redundant," Alangcas, 131 Hawai'i at 321, 318 P.3d at 611, but instead, it is of no substantive legal effect.

### c. "Communicates"

Alangcas suggests that the word "communicates" in HRS § 707-756(1)(a) is vague because it is undefined;[32] he argues that this vagueness invites arbitrary enforcement by police.

However, the "likelihood that anyone would not understand any of those common words seems quite remote" when a statute includes a scienter element requiring a felonious intent. See Hill v. Colorado, 530 U.S. 703, 732 (2000). Thus, when read with the rest of the statute, it is unlikely that the public will misunderstand "communicates" because of the clear requirements of the statute defining the prohibited communication. First, the communication must be made intentionally or knowingly. Second, the communication must be with a Minor; thus, at a minimum the person must consciously disregard a substantial risk that the other person is less than eighteen years of age. Third, the communication itself is not sufficient; it must be made in conjunction with an agreement to meet the Minor, with the intent to promote or facilitate a felony. Delimited by these three requirements, the general public is clearly informed of the nature of the "communication"

---

[32] The subsection defines the prohibited conduct, in part as, "[a]ny person who, using a computer or any other electronic device[] [i]ntentionally or knowingly communicates . . . with a minor." HRS § 707-756(1).

that is prohibited.  Consequently, there is nothing internally inconsistent about the reference to "communicates."

Further, as the communication and agreement elements must then be consummated with an intentional or knowing travel to the agreed upon place at the agreed upon time, there is little risk that police will enforce HRS § 707-756 in an arbitrary, ad hoc, or subjective manner.  The term "communicates" is accordingly not vague.

Thus, as the Catch-all Clauses, the Conviction Clauses, and the term "communicates" provide citizens of ordinary intelligence a reasonable opportunity to know what conduct is prohibited and provides explicit standards for those who apply the statute to do so in a consistent and nondiscriminatory manner, HRS § 707-756 is not unconstitutionally vague on these bases.[33]  Accordingly, we do not consider whether the statute is vague as applied to the specific conduct charged to Alangcas.

### D. Dormant Commerce Clause

The doctrine of the dormant commerce clause is a result implied from the federal government's exclusive authority

---

[33]   As the overbreadth analysis, supra, has already determined that HRS § 707-756 does not infringe on protected speech, we do not again address such contentions under a vagueness analysis of HRS § 707-756.

to control interstate commerce[34] and may require a court to invalidate a state law that interferes with that authority. Pike v. Bruce Church, Inc., 397 U.S. 137, 142 (1970).

> Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. . . . If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities.

Id. (emphases added). Thus, when a law does not express any purpose to discriminate against commerce to or from another state, the doctrine of the dormant commerce clause is implicated only when the state law has more than an incidental effect on interstate commerce.[35]

Commerce is economic activity. United States v. Morrison, 529 U.S. 598, 610 (holding that Congress may not regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce); see also id. at 628-35 (Souter, J., dissenting) (opposing the

---

[34] The U.S. Constitution grants Congress the power to regulate commerce "with foreign Nations, and among the several States, and with the Indian tribes." U.S. Const. art. I, § 8, cl. 3.

[35] When a law purports to discriminate between states in an economic regulation, it is generally invalid. "Time and again [the Supreme] Court has held that, in all but the narrowest circumstances, state laws violate the Commerce Clause if they mandate differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." Granholm v. Heald, 544 U.S. 460, 472 (2005).

majority's ruling, in part based on the "the mountain of data assembled by Congress . . . showing the effects . . . on interstate commerce").  HRS § 707-756 does not purport to regulate any type of economic transaction.  See Am. Libraries Ass'n v. Pataki, 969 F. Supp. 160, 163 (S.D.N.Y. 1997) (holding that a New York law that regulated commercial dissemination of pornographic material violated dormant commerce clause doctrine).

Where legitimate commerce is not burdened by a state law, the doctrine of the dormant commerce clause is inapplicable.  See People v. Foley, 731 N.E.2d 123, 133 (N.Y. 2000) (upholding a luring statute and stating, "We are hard pressed to ascertain any legitimate commerce that is derived from the intentional transmission of sexually graphic images to minors for the purpose of luring them into sexual activity. Indeed, the conduct sought to be sanctioned by Penal Law § 235.22 is of the sort that deserves no 'economic' protection.");  State v. Backlund, 672 N.W.2d 431, 438 (N.D. 2003) (concluding that North Dakota's electronic child luring statute did not violate the dormant commerce clause because "it is difficult to ascertain any legitimate commerce that is derived from the willful transmission of explicit or implicit sexual communications to a person believed to be a minor in order to willfully lure that person into sexual activity");  Cashatt v.

State, 873 So.2d 430, 436 (Fla. Dist. Ct. App. 2004) ("The state has a compelling interest in protecting minors from being seduced to perform sexual acts, and no legitimate commerce is burdened by penalizing the transmission of harmful sexual material to known minors in order to seduce them.").

Alangcas did not identify any legitimate commerce directly burdened by HRS § 707-756. As the ICA noted, "it is difficult to conceive of any legitimate commerce that would be burdened by penalizing predatory communication." Alangcas, 131 Hawai'i at 328, 318 P.3d at 618. To the extent that communication between individuals of a personal and non-economic nature, criminal or otherwise, is economic activity by virtue of that communication being channeled through "a computer or any other electronic device," Algancas has not demonstrated that there would be any effect—incidental or otherwise—upon interstate commerce resulting from the effect of HRS § 707-756. Thus, Alangcas' challenge to the validity of HRS § 707-756 under the doctrine of the dormant commerce clause is without merit as the electronic enticement statutory prohibition does not interfere with, or does not involve, interstate commerce.

## IV. Conclusion

Based upon the plain language of the statute, its legislative history, and principles of statutory construction, we hold that the felonious intent of HRS § 707-756 applies only

to the agreement element of that statute.  Having duly considered the scope of the statute, HRS § 707-756 is neither unconstitutionally overbroad nor vague; further, its application does not violate the dormant commerce clause.

For the reasons set forth in this opinion, the orders of the circuit court filed September 17, 2009, and the judgment on appeal of the ICA, filed January 14, 2014, are affirmed.

| | |
|---|---|
| Victor J. Bakke, | /s/ Mark E. Recktenwald |
| Paul J. Cunney, | |
| Marcus B. Sierra, | /s/ Paula A. Nakayama |
| Dean C.M. Hoe, and | |
| Daniel J. Kawamoto | /s/ Sabrina S. McKenna |
| for petitioner | |
| | /s/ Richard W. Pollack |
| David M. Louie and | |
| Marissa H.I. Luning | /s/ Fa'auuga To'oto'o |
| for respondent | |

